JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS

Antioch Section 8 Families for Fair Housing; Williams, Santeya D.; Scott, Mary R.; Payne, Alyce D.; Coleman, Karen L.

## DEFENDANTS

City of Antioch; Antioch Police Department; Antioch PD Chief of Police James Hyde; Sergeant Mitch Switters; Corporal Steve Bias, et al.

**(b)** County of Residence of First Listed Plaintiff Contra Costa
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Contra Costa
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Bay Area Legal Aid
1025 MacDonald Avenue, PO BOX 2289
Richmond, CA 94801
Telephone: (510) 233-9954

Attorneys (If Known)

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

| | |
|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) |

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury | **PERSONAL INJURY**<br>☐ 362 Personal Injury — Med. Malpractice<br>☐ 365 Personal Injury — Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 610 Agriculture<br>☐ 620 Other Food & Drug<br>☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 630 Liquor Laws<br>☐ 640 R.R. & Truck<br>☐ 650 Airline Regs.<br>☐ 660 Occupational Safety/Health<br>☐ 690 Other<br><br>**LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Railway Labor Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br><br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 810 Selective Service<br>☐ 850 Securities/Commodities/Exchange<br>☐ 875 Customer Challenge 12 USC 3410<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 892 Economic Stabilization Act<br>☐ 893 Environmental Matters<br>☐ 894 Energy Allocation Act<br>☐ 895 Freedom of Information Act<br>☐ 900Appeal of Fee Determination Under Equal Access to Justice<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | |
| ☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | ☐ 441 Voting<br>☐ 442 Employment<br>☒ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☒ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence<br>**Habeas Corpus:**<br>☐ 530 General<br>☐ 535 Death Penalty<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br><br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 463 Habeas Corpus – Alien Detainee<br>☐ 465 Other Immigration Actions | | | |

## V. ORIGIN (Place an "X" in One Box Only)

| | | | | Transferred from | | Appeal to District |
|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 another district (specify) | ☐ 6 Multidistrict Litigation | ☐ 7 Judge from Magistrate Judgment |

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
42 U.S.C. 3617, 42 U.S.C. 1983

Brief description of cause:
Racial Discrimination

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY

PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2)
(PLACE AND "X" IN ONE BOX ONLY)

☒ SAN FRANCISCO/OAKLAND    ☐ SAN JOSE

DATE   5-2-08

SIGNATURE OF ATTORNEY OF RECORD

1  David M. Levin, SBN 193801
   Susun Kim, SBN 154437
2  Katherine R. Siegfried, SBN 250558
   Robert Capistrano, SBN 70382
3  BAY AREA LEGAL AID
   1025 Macdonald Avenue, P.O. Box 2289
4  Richmond, CA 94801
   Telephone: 510-233-9954
5  Facsimile: 510-236-6846
6  Email: dlevin@baylegal.org

7  Attorneys for Plaintiffs ANTIOCH SECTION 8 FAMILIES
   FOR FAIR HOUSING, SANTEYA DANYELL WILLIAMS,
8  MARY RUTH SCOTT, ALYCE DENISE PAYNE, and
9  KAREN LATREECE COLEMAN

**FILED**

**MAY – 2 2008**

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

10

11           **IN THE UNITED STATES DISTRICT COURT**

12       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**                    A D R

13

14  ANTIOCH SECTION 8 FAMILIES FOR          )
    FAIR HOUSING, SANTEYA DANYELL            )   Case No.: C08-02301
15  WILLIAMS; MARY RUTH SCOTT;               )                               B Z
    ALYCE DENISE PAYNE; and                  )
16  KAREN LATREECE COLEMAN,                  )
                                             )   **COMPLAINT FOR DAMAGES AND**
17                                           )   **FOR INJUNCTIVE AND**
                 Plaintiffs,                 )   **DECLARATORY RELIEF**
18                                           )
         vs.                                 )
19                                           )
    CITY OF ANTIOCH; ANTIOCH POLICE          )
20  DEPARTMENT; JAMES HYDE, Chief of         )
    Police, Antioch Police Department, in his official )   **JURY TRIAL DEMANDED**
21  capacity; SERGEANT MITCH SCHWITTERS      )
    CORPORAL STEVE BIAS, OFFICER             )
22  DESMOND BITTNER, and OFFICER             )
    WILLIAM DILLARD II, in their individual and )
23  official capacities; and DOES 1-10,      )
                                             )
24               Defendants.                 )
                                             )
25  _____      )

26

1  Plaintiffs, ANTIOCH SECTION 8 FAMILIES FOR FAIR HOUSING, SANTEYA DANYELL
2  WILLIAMS, MARY RUTH SCOTT, ALYCE DENISE PAYNE, and KAREN LATREECE
3  COLEMAN, hereby allege as follows:

4  ## INTRODUCTORY STATEMENT

5  1.  Plaintiffs bring this lawsuit against the CITY OF ANTIOCH, ANTIOCH POLICE
6  DEPARTMENT, CHIEF JAMES HYDE, SERGEANT MITCH SCHWITTERS, CORPORAL
7  STEVE BIAS, OFFICER DESMOND BITTNER, and OFFICER WILLIAM DILLARD II, for
8  violating Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments, the Fair Housing
9  Act, and California Government Code § 11135 by disproportionately focusing investigations of
10  alleged tenant-caused disturbances on African-American residents of Antioch who participate in
11  the Section 8 Housing Choice Voucher Program as part of a concerted and unlawful campaign to
12  seek evidence which could lead to the termination of participants' Section 8 voucher benefits,
13  and/or seeking to convince the landlords of Section 8 voucher benefit participants to evict
14  Plaintiffs and other voucher participants. Plaintiffs seek compensatory, statutory and exemplary
15  damages, and declaratory and injunctive relief.

16  ## PARTIES

17  2.  Plaintiffs SANTEYA DANYELL WILLIAMS, MARY RUTH SCOTT, ALYCE
18  DENISE PAYNE, and KAREN LATREECE COLEMAN (collectively referred to as the
19  "Individual Plaintiffs") are African-American females who reside or formerly resided in the City
20  of Antioch, County of Contra Costa, State of California.

21  3.  At all times relevant, each of the Individual Plaintiffs named in the above paragraph
22  was and continues to be eligible for rent subsidy benefits under the federally funded Section 8
23  Housing Choice Voucher Program ("HCVP" or "Voucher Program") commonly known as
24  "Section 8," and codified at 42 U.S.C. § 1437f.

25  4.  Group Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR HOUSING is a
26  membership organization consisting of current and former residents of the City of Antioch who
currently receive or formerly received subsidized housing benefits under the Section 8 Voucher

1   Program. Group Plaintiff has standing to assert the claims of its members, who have suffered,

2   continue to suffer, and will suffer harm as a result of Defendants' discriminatory and unlawful

3   practices alleged in this complaint.

4       5. On information and belief, Defendant CITY OF ANTIOCH ("CITY") is a municipal

5   corporation which owns, operates, and governs the ANTIOCH POLICE DEPARTMENT

6   ("APD") pursuant to the laws of the State of California.

7       6. On information and belief, Defendant JAMES HYDE ("HYDE") is the Chief of

8   Police for the City of Antioch responsible for the administration of Defendant APD and the

9   training and supervision of its officers, and for the compliance of APD officers with the

10  Constitution and applicable law.

11      7. On information and belief, Defendants SERGEANT MITCH SCHWITTERS,

12  CORPORAL STEVE BIAS, OFFICER DESMOND BITTNER, and OFFICER WILLIAM

13  DILLARD, II are and at all times material to this complaint were employees of Defendants

14  CITY OF ANTIOCH and the APD.

15      8. Each Defendant named in paragraphs 6 and 7 is, and at all times material to this

16  complaint was, duly employed, appointed and acting, as a sworn peace officer of APD, under

17  color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs and

18  usages of the State of California and/or the City of Antioch. Each Defendant named in

19  paragraphs 6 and 7 is sued in both his individual and official capacities.

20      9. On information and belief, Defendants CITY, APD and HYDE are, and at all times

21  material to this complaint were, responsible for the employment, training, supervision, and

22  discipline of Defendants Schwitters, Bias, Bittner, and Dillard.

23      10. On information and belief, at all times material to this Complaint, Defendants

24  Schwitters, Bias, Bittner and Dillard were assigned to the APD COMMUNITY ACTION TEAM

25  ("CAT"). At all times material to this complaint, Defendant SCHWITTERS acted within the

26  scope of his employment with Defendants CITY and APD.

1    11.   Plaintiffs are ignorant of the true names and capacities of the Defendants named
2    herein as Does 1 through 10, and therefore sue these Defendants by their fictitious names.
3    Plaintiffs will amend the complaint to allege the true names and capacities of these Doe
4    Defendants when they have been ascertained.

5    12.   Plaintiffs are informed and believe, and on that basis allege, that each of the
6    Defendants, including the Doe Defendants, is responsible for the occurrences herein alleged, and
7    that Plaintiffs' damages were proximately caused thereby.

8    13.   Plaintiffs are informed and believe that each Defendant was the agent or employee
9    of each of the other Defendants, and in perpetrating the wrongful conduct detailed in this
10   complaint, acted within the scope of such agency or employment, or ratified the acts of the other.

11   14.   Plaintiffs are informed and believe that each of the Defendants caused, and is
12   responsible for the below-described unlawful conduct and resulting injuries in that each of the
13   Defendants participated in the unlawful conduct or acted jointly with others who did so;
14   authorized, acquiesced in or set in motion actions that led to the unlawful conduct; failed to take
15   action to prevent the unlawful conduct; failed and refused, with deliberate indifference to
16   Plaintiffs' rights, to initiate and maintain adequate training and supervision; failed to prevent
17   further harm to Plaintiffs; and/or ratified the unlawful conduct and actions by employees and
18   agents under Defendants' direction and control, including failure to take remedial action.

19                              **JURISDICTION AND VENUE**

20   15.   This Court has subject matter jurisdiction over the parties and this action pursuant
21   to 28 U.S.C. §§ 1331 and 1343. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court has
22   jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and
23   proper.

24   16.   Pursuant to 42 U.S.C. § 1367(a), this Court has supplemental jurisdiction over the
25   state claims brought in this action, which arise from a common nucleus of operative facts and
26   from the same transactions and occurrences raised in Plaintiffs' federal causes of action.

1    17.    Venue lies in United States District Court for the Northern District of California

2  pursuant to 28 U.S.C. §§ 84 and 1391 because a substantial part of the events that gave rise to the

3  claims alleged in this complaint arose in the County of Contra Costa and one or more Defendants

4  reside in the County of Contra Costa or conduct business in the County of Contra Costa.

5                              **INTRADISTRICT ASSIGNMENT**

6    18.    The claims alleged herein arose in the County of Contra Costa. This action is

7  properly assigned to the Oakland or San Francisco Division of the United States District Court

8  for the Northern District of California pursuant to Civil Local Rule, 3-2(d).

9                              **STATEMENT OF FACTS**

10                   **The Section 8 Housing Choice Voucher Program**

11    19. The Section 8 Housing Choice Voucher Program ("Voucher Program") is a federally-

12  funded housing program whose purpose includes "aiding lower-income families in obtaining a

13  decent place to live and ... promoting economically mixed housing." 42 U.S.C. 1437f(a).

14    20.    The Voucher Program is one of several programs authorized under 42 U.S.C. 1437f

15  and administered by local public housing authorities, in Plaintiffs' case, the Housing Authority

16  of the County of Contra Costa ("HACCC"). HACCC administers approximately 9,100 Housing

17  Choice Vouchers, including about 1,582 in the City of Antioch.

18    21.    The Voucher Program title emphasizes the objective of "Housing Choice" because

19  its express legislative purpose is to permit low-income participants to relocate to higher

20  opportunity neighborhoods such as those found in Antioch, where better schools and/or jobs may

21  be found, and thereby escape the deleterious social conditions which often exist in primarily

22  poor, lower opportunity neighborhoods.

23    22.    The Voucher Program requires a participant who has been awarded a housing

24  voucher to find a landlord who is willing to accept the participant as a tenant. 42 U.S.C. §

25  1437f(o)(6). Under the program, the housing costs of a low-income Section 8 participant are

26  subsidized such that the participant pays the landlord 30% of his or her income as rent, with the

1    difference between the participant's payment and the market rent covered by the federal subsidy.
2    42 U.S.C. § 1437f(o)(2).

3         23.    As a condition of receiving benefits, Voucher Program participants agree to abide
4    by a list of "tenant obligations" which include, *inter alia*, not engaging in criminal activity which
5    threatens the health, safety, or right to peaceful enjoyment of neighbors; and not to allow a
6    person not named on the lease to reside on the premises without the permission of the public
7    housing authority. 42 U.S.C. § 1437f(o)(7)(D); 24 C.F.R. § 982.551(h) and (l).

8         24.    However, to avoid blaming victims for the actions of perpetrators, disturbances
9    resulting from domestic violence are specifically excluded as a permissible reason for
10   terminating a participant's benefits or evicting the tenant. 42 U.S.C. §§ 1437f(o)(7)(C),
11   1437f(o)(7)(C), and 1437f(o)(20)(A).

12                          **The City of Antioch and its CAT Team**

13        25.    In 2003, the number of Section 8 Housing Choice Vouchers administered by
14   HACCC and utilized by residents of Antioch was 1,049. By 2007, this number had grown to
15   1,582, approximately 4.37% of the total number of the City's households. Although three-
16   quarters of Section 8 voucher participants live in the poorer northwestern side of town, some
17   have been able to rent in the more affluent, and newer southeastern part of town. Because of the
18   downturn in the Antioch housing market beginning in 2006, and the inability of homeowners and
19   speculators to rent their homes, Section 8 Voucher participants were able to use their benefits to
20   rent larger homes which would otherwise have been left vacant and/or lost to foreclosure.

21        26.    By February 2006, officials in Antioch were publicly attributing problems in the
22   City to an influx of Section 8 participants. City Councilmember Jim Davis complained that
23   Section 8 participants "seem to be a magnet for problems throughout the city of Antioch. . . . I
24   want to see what recourse, as a city, we have to limit the numbers [of Section 8 tenants]." Mayor
25   Donald Freitas was quoted as saying, "If the city of Antioch has ten percent of the county
26   population, but has (16 percent) of Section 8 housing, it is a reason for concern." Other City

COMPLAINT FOR DAMAGES AND                                           *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF            - 6 -                   *City of Antioch et al.*

1   officials reported that "neighbors' complaints have led them to believe that renters and Section 8
2   recipients [were] creating problems [in Antioch]."

3       27.  In April 2006, Councilmember Davis called for the City to create its own agency to
4   "handle complaints about Section 8 housing." Soon after, City officials, "police and code-
5   enforcement personnel decided to look more closely at the number of calls for service involving
6   . . Section 8 housing." According to a report the City issued in November 2006, "City leaders . .
7   . believe Antioch is home to a disproportionate number of subsidized tenants . . . [T]heir
8   behavior patterns are disruptive; and they bring crime, drugs and disorder to the neighborhood."

9       28.  Beginning in May 2006, the APD attempted to obtain a list of all Section 8
10  properties in Antioch in order to determine "whether Section 8 households are responsible for a
11  disproportionate number of police calls." In addition, City officials stated they expected that
12  "the number crunching [would] enable the city to ratchet up the pressure on troublemakers." The
13  APD reported that the addresses of so-called "repeat offenders" on Section 8 — those whose
14  residences had been the focus of multiple service calls — would be given to the Housing
15  Authority to provide "a basis for revoking eligibility" for Section 8 housing assistance. APD
16  Corporal Barry Delavan explained, "We need a referral system, and that's what we're trying to
17  work out."

18      29.  In May 2006, as the foreclosure crisis was heating up, some Antioch residents
19  "complained [to the City Council] . . . that low-income residents receiving federal housing
20  assistance [were] dragging the city down by increasing crime and causing blight." Certain public
21  officials and residents accused the Housing Authority of neglecting its duty by "failing to
22  monitor Section 8 landlords and tenants who [were] causing blight and crime." Around the same
23  time, signs appeared on the doors of a number of renters in the City, stating: "No More Rentals.
24  No More Section 8. Save Antioch NOW. We THE RESIDENTS are watching YOU."

25      30.  Also in May 2006, purportedly frustrated with nuisance allegedly caused by renters,
26  particularly those receiving Section 8 Housing Choice Voucher benefits, certain residents of

COMPLAINT FOR DAMAGES AND                              - 7 -           *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF                                       *City of Antioch et al.*

1  Antioch formed a group calling itself "United Citizens for Better Neighborhoods" ("UCBN").

2  Its founder, Gary Gilbert, stated he was particularly incensed by low-income tenants he

3  perceived had brought a "Ghetto attitude" to Antioch. UCBN began demanding that the City

4  somehow address the alleged problem.

5      31.   In and about July of 2006, reacting to complaints of increased nuisance and

6  criminal activity allegedly caused by the influx of Section 8 Voucher Participants to Antioch, the

7  City and APD created a unit called the "Community Action Team" ("CAT") within the police

8  department. Although ostensibly aimed at addressing "quality of life" issues throughout

9  Antioch, from the outset CAT disproportionately focused, and continues to focus, on Section 8

10  voucher participants, and particularly on those residing in the more affluent neighborhoods of

11  Antioch, southeast of the railroad tracks.

12      32.   At a September 2006 City Council meeting, Council members accused the Housing

13  Authority of "not moving quick enough to root out problem tenants who diminish the area's

14  quality of life." Mayor Freitas requested "more enforcement" of Section 8 regulations by the

15  Contra Costa Housing Authority. Councilman Jim Conley added, "We care about violations. . . .

16  The city of Antioch is going to be on this issue like a pit bull — we're not going to let this one

17  go."

18      33.   On receiving a complaint reporting a disturbance or nuisance in a residential

19  neighborhood, including domestic violence related incidents, CAT made and continues to make

20  special efforts to determine if the resident of the premises involved in the incident was a

21  participant in the Section 8 Housing Choice Voucher Program. If so, the complaint of

22  disturbance or nuisance would be forwarded to HACCC, often with the suggestion that the

23  participant be terminated from the Voucher Program for violating his or her tenant obligations

24  imposed on participants by 24 C.F.R. § 982.551.

25      34.   CAT also used the fact that some visitors to homes of Voucher Program participants

26  may be on probation or parole as a pretext to search these homes for evidence that the tenant was

   violating, not only criminal law, but also the tenant obligations imposed on participants by 24

COMPLAINT FOR DAMAGES AND                                    *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF          - 8 -              *City of Antioch et al.*

1  C.F.R. § 982.551. The usual justification employed by CAT was to assume, whether or not
2  actually supported by fact, that the parolee or probationer was living in the premises and had, as
3  a condition of parole or probation, consented to searches of this home as his or her dwelling unit.

4      35.   Data from 2007 shows that the Housing Authority of the County of Contra Costa
5  declined to seek termination of more than 60 percent of the referrals they received from CAT.
6  Furthermore, the rate of "unfounded referrals" by CAT to the housing authority in 2006 and
7  2007 was significantly higher for Voucher Program participants identified as African-American.
8  According to housing authority data, 71.8 percent of unfounded referrals by CAT involved
9  African-American participants, and only 17.9 percent involved White participants.

10  ## Plaintiff SANTEYA DANYELL WILLIAMS

11      36.   Plaintiff Santeya Danyell Williams lives in Antioch with her children, and is a
12  participant in the Section 8 Housing Choice Voucher Program. In January 2007, Defendants
13  visited Plaintiff's home, responding to Plaintiff's request for assistance to stop a threat of
14  domestic violence against Plaintiff Williams from one Mr. Batieste. In the previous two years,
15  Ms. Williams had been the subject of five citizen complaints involving her dogs, the most recent
16  having occurred six months earlier in June 2006, and the next earliest having occurred the
17  previous year, in January 2005.

18      37.   Plaintiff Williams suffered from an incident of domestic violence, and her oldest
19  son called APD to assist his mother. According to an APD Incident Report dated January 24,
20  2007, on January 21, 2007 at 11:39 a.m. officers arrived at Ms. Williams' residence in response
21  to an incident of domestic violence in which she was the victim.

22      38.   APD records show that after officers learned Ms. Williams was a participant in the
23  Voucher Program, their focus turned toward finding grounds to terminate her housing benefits.
24  Notes in the APD Incident Report on January 22, 2007 state:

25  ABOVE RESIDENCE IS ON SECTION 8 ASSISTANCE. PATROL WAS
    RECENTLY AT THE RESIDENCE FOR A DOMV AND DISCOVERED THAT
26  THE RESPONSIBLE WAS AN UNAUTHORIZED RESIDENT OF THE HOME.

COMPLAINT FOR DAMAGES AND
INJUCTIVE AND DECLARATORY RELIEF    - 9 -

*Antioch Section 8 Families v.*
*City of Antioch et al.*

1    39.  On or about March 28, 2007 Defendant Schwitters sent a letter in the name of

2  Defendant Police Chief Hyde directed to Ms. William's landlord, advising him that "while

3  investigating complaints about the family at this address, [Defendants] discovered that problems

4  were being caused by an adult male living in the house. This male is most likely not on the

5  lease. We also discovered that the family living in your property has two pit bull dogs that have

6  been causing a nuisance to the surrounding neighborhood." The letter warned that the landlord

7  could be "held responsible for criminal or nuisance related activity" on his property; asked for

8  "immediate compliance regarding the listed issues [to] avoid criminal abatement and or civil

9  litigation"; and warned that "should [the landlord] fail to take reasonable steps to prevent any

10  future unlawful use of this property [the landlord] will not be considered an 'innocent owner' in

11  any future action …"

12    40.  Defendants also conveyed these accusations to HACCC as purported violations of

13  the obligations owed by Plaintiff to HACCC. HACCC thereafter issued a notice proposing to

14  terminate Plaintiff Williams' voucher benefits for violating the prohibition on unauthorized

15  household residents and/or criminal activity which threatens the health, safety, or right to

16  peaceful enjoyment of other residents or neighbors. Plaintiff requested a hearing at which

17  Defendant Bittner testified. In a decision dated April 30, 2007, HACCC's hearing officer issued

18  a decision finding these allegations to be unsupported, and refused to sustain the proposed

19  termination.

20    **Plaintiff MARY RUTH SCOTT**

21    41.  Plaintiff Mary Ruth Scott lives with her children in Antioch and is a participant in

22  the Section 8 Housing Choice Voucher Program.

23    42.  On January 11, 2007, according to an APD report printed on January 17, 2007 in

24  Case Number 07000534, CAT officers began an investigation of Ms. Scott's home "due to

25  constant domestic disputes at the location." This January 17 APD report also explained the CAT

26  officers "investigate[ ] homes that are causing neighborhood disturbances."

1     43. On or about January 16, 2007, CAT officers, including Defendant Bittner (Badge No.

2    3252), Defendant Dillard (Badge No. unknown), and Defendant Schwitters (Badge No. 2008),

3    forcibly entered the home of Ms. Scott. The officers wrongfully claimed authorization to search

4    Ms. Scott's house based on an arrest warrant for Tyrone Young who was visiting her home, but

5    the warrant did not list her address. Plaintiff Scott told the officers not to enter her house, but

6    they said their warrant allowed them to enter her house. When Ms. Scott asked the CAT

7    Officers to see a copy of the warrant they refused to show it to her. Defendants searched Ms.

8    Scott's entire house and garage, including opening cupboards and bedroom drawers. At the

9    time, Ms. Scott was pregnant and at home with her one year-old daughter.

10     44. On and about March 28, 2007, Defendant Switters sent a letter in the name of

11    Defendant Police Chief HYDE directed to Ms. Scott's landlord, advising him that APD had

12    "arrested an adult male who we found to be living in the home [and who] is most likely not on

13    the lease." The letter warned that the landlord could be "held responsible for criminal or

14    nuisance related activity" on his property; asked for "immediate compliance regarding the listed

15    issues [to] avoid criminal abatement and or civil litigation"; and warned that "should [the

16    landlord] fail to take reasonable steps to prevent any future unlawful use of this property [the

17    landlord] will not be considered an 'innocent owner' in any future action …"

18     45. HACCC thereafter terminated Ms. Scott's Section 8 Voucher. Plaintiff sought

19    judicial review of the termination decision, and after a review of the facts, HACCC rescinded its

20    termination. Ms Scott continues to live in Antioch and continues to receive housing benefits

21    under the Section 8 Voucher Program.

22                         **Plaintiff KAREN LATREECE COLEMAN**

23     46. Plaintiff Karen Latreece Coleman lives in Antioch with her children and is a

24    participant in the Section 8 Housing Choice Voucher Program. In June 2007, Defendant Bittner

25    and other Defendants came to Plaintiff's home in the early morning, claiming to have

26    authorization to search Plaintiff's home looking for Thomas Coleman, Plaintiff's husband.

    Defendants purportedly based their authority to search Plaintiff's home on Mr. Coleman's status

1 │ as a parolee. Although Plaintiff objected to the search, Defendants persisted, damaged the front

2 │ door, searched the home, took photographs, and told Plaintiff that she would lose her Section 8

3 │ benefits. Defendants also served Mr. Coleman with a temporary civil harassment restraining

4 │ order sought by a neighbor that the Contra Costa County Superior Court later refused to make

5 │ permanent.

6 │     47. Plaintiff had previously requested that HACCC add Mr. Coleman to her lease, and

7 │ permission was granted on June 29, 2007. Mr. Coleman now lives with Plaintiff.

8 │     48. On or about July 3, 2007, Defendants Bittner and Schwitters visited Mr. Coleman's

9 │ place of employment to harass him. Although Mr. Coleman told Defendants that he now resided

10 │ with his wife, Defendants threatened him with arrest if he was found at Plaintiff's home.

11 │ Defendants also asked to see Mr. Coleman's employment records but were turned down by the

12 │ employer.

13 │ **Plaintiff ALYCE DENISE PAYNE**

14 │     49.   Until her landlord terminated her tenancy at the behest of Defendants, Plaintiff

15 │ Alyce Denise Payne lived in Antioch with her children. Plaintiff was then, and currently is a

16 │ participant in the Section 8 Housing Choice Voucher Program. In January 2007, Defendants

17 │ visited Plaintiff's home, responding to Plaintiff's request for assistance to stop threats of

18 │ domestic violence against Plaintiff Payne by one Edward Shivers. In the previous two years,

19 │ Plaintiff Payne had a number of times requested police assistance to stop domestic violence

20 │ perpetrated by Shivers.

21 │     50.   Defendants then contacted HACCC on or about March 21, 2007 to report alleged

22 │ violations of Plaintiff's obligations as a participant in the Section 8 Housing Choice Voucher

23 │ Program. The March 21 letter states: "the constant need for police presence and nuisance to the

24 │ immediate vicinity of the premises constitutes a violation of … [the Section 8 Voucher

25 │ Program's] Family Obligations Form …" The letter also recites Ms. Payne's alleged criminal

26 │ record, and that of her children and Mr. Shivers, and included incidents that did not occur at Ms.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE AND DECLARATORY RELIEF   - 12 -   *Antioch Section 8 Families v.
City of Antioch et al.*

1    Payne's home or have any relation to her eligibility for Section 8 voucher benefits, and some of

2    the information related to a juvenile and was confidential under Calif. Welf. & Inst. Code § 827.

3        51.    Defendants issued the March 21, 2007 letter with the intent of inducing HACCC to

4    terminate Ms. Payne's Section 8 voucher benefits. HACCC thereafter issued a notice proposing

5    to terminate Plaintiff's voucher benefits for violating the prohibition against drug-related

6    criminal activity, or violent criminal activity, or other criminal activity which threatens the

7    health, safety, or right to peaceful enjoyment of other residents or neighbors. After Plaintiff

8    sought the assistance of Bay Area Legal Aid, HACCC withdrew this termination notice.

9        52.    On or about March 28, 2007 Defendant Schwitters sent a letter in the name of

10    Defendant Police Chief HYDE directed to Ms. Payne's landlord, advising him that "[t]he current

11    residents of your home have been involved in criminal activity and have recent arrests by APD.

12    Since they have resided in your home, APD has responded to the residence on (2) separate

13    disturbance calls. At their previous residence ... APD responded to the location approximately

14    (29) times primarily for disturbance related incidents." The letter warned that the landlord could

15    be "held responsible for criminal or nuisance related activity" on his property, asked for

16    "immediate compliance regarding the listed issues [to] avoid criminal abatement and or civil

17    litigation", and warned that "should [the landlord] fail to take reasonable steps to prevent any

18    future unlawful use of this property [the landlord] will not be considered an 'innocent owner' in

19    any future action ..."

20        53.    When the March 28, 2007 letter did not lead Plaintiff's landlord to evict Ms. Payne,

21    Defendants followed up with a second letter dated October 4, 2007. In and about December

22    2007 and citing Defendants' two letters, Plaintiff's landlord told Ms. Payne that her lease would

23    not be renewed, and her family must move. Plaintiff thereafter vacated her home and moved to

24    Bay Point, California, where she continues to receive rent subsidies for her new home from the

25    Section 8 Housing Choice Voucher Program.

26        54.    Plaintiffs Williams, Scott, Coleman, and Payne timely filed notices of claims for

money damages against the City of Antioch, which claims have been rejected.

COMPLAINT FOR DAMAGES AND                                    *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF        - 13 -              *City of Antioch et al.*

1

**Defendants' Custom, Policy, or Practice**

2   55.   In establishing the Community Action Team ("CAT") to investigate complaints of
3   disturbance and nuisance occurring in residential units, Defendants City of Antioch, Antioch
4   Police Department, and Police Chief James Hyde knew and continue to know that a primary
5   focus of CAT would and will continue to be tenants participating in the Section 8 Housing
6   Choice Voucher Program, and that one of CAT's principal activities would and will continue to
7   be to gather evidence that Section 8 Housing Choice Voucher participants were and are allegedly
8   violating the obligations owed by participants to HACCC as conditions of receiving these
9   benefits. Thus, while rental housing made up only 25% of Antioch households, 85% of CAT
10   investigation involved rental housing; and although voucher participants made up less then 5%
11   of Antioch households (one-fifth of all rental housing), two-thirds of CAT investigations
12   involved homes where voucher participants resided.

13   56.   The brunt of CAT investigations falls disproportionately on African-Americans.
14   African-Americans constitute 56% of Antioch residents receiving Section 8 voucher benefits,
15   and approximately two-thirds of all CAT investigations involved African-American voucher
16   participants.  About two-thirds of CAT investigations involving Section 8 voucher participants
17   are referred to HACCC, and 70% of all CAT referrals involve African-American families.

18   57.   In investigating Section 8 voucher participants, Defendants had and continue to
19   have a pattern and practice of seeking to search the homes rented by Section 8 voucher
20   participants to gather evidence that the Section 8 voucher participant allegedly was, or are,
21   violating the obligations owed to HACCC, in particular, that the Section 8 voucher participant
22   had allowed persons not on their lease to reside on the premises.

23   58.   To conduct these searches, Defendants had and continue to have a pattern and
24   practice of relying on the parolee or probationer status of persons having a relationship to the
25   Section 8 voucher participant, to establish consent to search the homes of Section 8 voucher
26   participant if the participant does not actually consent to the search.

1       59. In investigating Section 8 voucher participants, Defendants had and continue to
2   have a pattern and practice of compiling records of disturbance calls to the homes of voucher
3   participants, and forwarding these compilations to HACCC purportedly as evidence of violent
4   criminal activity, or criminal activity which threatens the health, safety, or right to peaceful
5   enjoyment of other residents or neighbors and which violate obligations owed by the voucher
6   participant to HACCC. Defendants engaged in this practice with little investigation as to
7   whether the voucher participant was the perpetrator or responsible party for the disturbance, even
8   in incidents involving domestic violence perpetrated on the voucher participant.

9       60. In investigating complaints of disturbance and nuisance, Defendants had and
10  continue to have a pattern and practice of sending letters to landlords of affected addresses
11  stating that their tenant had engaged in criminal and/or nuisance activity, and advising the
12  landlord that s/he could be held responsible. Since Defendants were and are particularly
13  interested in incidents involving Section 8 Housing Choice Voucher participants, these letters
14  were and are disproportionately sent to landlords of voucher participants.

15      61. Plaintiffs are informed and believe that as a matter of custom, policy and practice,
16  Defendants CITY, APD, and HYDE inadequately and improperly investigate complaints of
17  police misconduct. As a matter of custom, policy and practice, APD inadequately and improperly
18  supervises and trains its police officers, including the officers identified herein, thereby failing to
19  adequately discourage further constitutional violations on the part of its officers. As a matter of
20  custom, policy and practice, the City and APD authorize and/or ratify the unlawful and
21  discriminatory conduct and behavior of Antioch City police officers especially when such
22  unlawful and discriminatory conduct and behavior is directed at African-American citizens.

23      62. The customs, policies, or practices described in paragraphs 55-61 were and continue
24  to be carried out by Defendants under color of state, local, or municipal law.

25

26

COMPLAINT FOR DAMAGES AND
INJUCTIVE AND DECLARATORY RELIEF          - 15 -

*Antioch Section 8 Families v.*
*City of Antioch et al.*

1

**Claim for Punitive Damages**

2      63.    Defendants' acts and omissions were intentional, willful, malicious, reckless, and in

3   conscious disregard of each Individual Plaintiff's protected rights. As such and to deter future

4   similar conduct by Defendants, each Plaintiff other than ANTIOCH SECTION 8 FAMILIES

5   FOR FAIR HOUSING is entitled to an award of punitive damages against Defendants.

6                          **FIRST CLAIM FOR RELIEF**

7                  **42 U.S.C. § 3617 (Violation of Fair Housing Law)**

8                          **(Against all Defendants)**

9      64.    Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

10     65.    Each named Individual Plaintiff is an African-American female and member of a

11  class protected by the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*

12     66.    In searching or attempting to search the homes of Plaintiffs Scott and Coleman for

13  evidence that the participant had violated obligations owed by the participant to HACCC,

14  Defendants coerced, intimidated, threatened, or interfered with each Plaintiff's exercise or

15  enjoyment of the terms, conditions or privileges of renting their home in violation of 42 U.S.C. §

16  3617.

17     67.    In notifying HACCC of domestic violence incidents involving Plaintiffs Williams,

18  Scott and Payne, and describing such incidents as criminal activity in violation of the obligations

19  owed by participants of the Section 8 Housing Choice Voucher Program to HACCC, Defendants

20  coerced, intimidated, threatened, or interfered with each Plaintiff's exercise or enjoyment of the

21  terms, conditions or privileges of renting their home in violation of 42 U.S.C. § 3617.

22     68.    In notifying the landlords of Plaintiffs Williams, Scott and Payne that their tenants

23  were involved in criminal, nuisance, and/or other disturbances in and about the premises rented

24  by each Plaintiff, Defendants coerced, intimidated, threatened, or interfered with each Plaintiff's

25  exercise or enjoyment of the terms, conditions or privileges of renting their home in violation of

26  42 U.S.C. § 3617.

1    69.    The actions described in the paragraphs above constitute coercion, intimidation,

2    threats, or interference by Defendants in the exercise or enjoyment by members of Plaintiff

3    ANTIOCH SECTION 8 FAMILIES FOR FAIR HOUSING of the terms, conditions or

4    privileges of renting their homes, in violation of 42 U.S.C. § 3617.  These actions are ongoing

5    and will continue to occur unless stopped by this Court.

6    70.    As a direct and proximate cause of Defendants' actions, each individual Plaintiff

7    suffered damages in an amount according to proof, including emotional distress, loss of security,

8    and out-of-pocket expenses.

9                             **SECOND CLAIM FOR RELIEF**

10                    **42 U.S.C. § 1983 (Violation of Fourth Amendment)**

11                              **(Against all Defendants)**

12    71.    Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

13    72.    By entering Plaintiff Coleman's dwelling and proceeding to handcuff her and

14    search the dwelling, all without Plaintiff's consent or a search warrant, Defendants Bittner,

15    Dillard, and Bias conducted an unreasonable search and seizure in violation of the Fourth

16    Amendment to the Constitution of the United States.

17    73.    By entering Plaintiff Scott's dwelling and proceeding to search the dwelling, all

18    without Plaintiff's consent and refusing to show Plaintiff an arrest warrant which ostensibly was

19    the basis for their entry and search, Defendants Bittner, Dillard, and Schwitters conducted an

20    unreasonable search and seizure in violation of the Fourth Amendment to the Constitution of the

21    United States.

22    74.    At all times relevant, Defendants Bittner, Dillard, Bias, and Schwitters were on-

23    duty police officers acting under color of state law in both their official and personal capacities,

24    and under the supervision of Defendant Hyde.

25    75.    The above described actions evidence a custom, policy or practice of Defendants

26    City of Antioch and its Police Department of conducting pretextual searches of the homes of

1 | Section 8 voucher participants for evidence of purported violations by the participants of the

2 | obligations owed by participants to HACCC.

3 |     76.    The above described custom, policy or practice has directly affected, and continues

4 | to affect individual members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR

5 | HOUSING.

6 |     77.    As a direct and proximate cause of Defendants' actions, Plaintiffs Coleman and

7 | Scott suffered damages in an amount according to proof, including emotional distress, loss of

8 | security, and out-of-pocket expenses.

9 | **THIRD CLAIM FOR RELIEF**

10 | **42 U.S.C. § 1983 (Retaliation for Exercise of First Amendment Rights)**

11 | **(Against all Defendants)**

12 |     78.    Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

13 |     79.    In requesting that the Antioch Police Department respond to threats of domestic

14 | violence aimed at Plaintiffs Scott and Payne, each Plaintiff exercised her right to seek redress

15 | from the government, a right protected by the First Amendment to the Constitution of the United

16 | States.

17 |     80.    Defendants Hyde and Schwitters, acting in concert with Defendants Bittner and

18 | Dillard, retaliated against Plaintiffs Scott and Payne for their exercise of First Amendment rights

19 | by directing to each Plaintiff's landlord the letters dated March 28, 2007 accusing each Plaintiff

20 | of criminal or nuisance activity, and/or of cohabiting with an adult male who was not on each

21 | Plaintiff's lease with their landlords.

22 |     81.    The above described actions evidence a custom, policy or practice of Defendants

23 | City of Antioch and its Police Department of retaliating against Section 8 voucher participants

24 | who seek to redress threats of domestic violence aimed at the participant, by sending letters to

25 | the landlords of the voucher participants and HACCC, accusing the participants of criminal or

26 | nuisance behavior, and of violations by the participants of the rules governing the Section 8

| voucher program.

1    82.    The above described custom, policy or practice has directly affected, and continues
2    to affect individual members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR
3    HOUSING.

4    83.    As a direct and proximate cause of Defendants' actions, Plaintiff Coleman and Scott
5    suffered damages in an amount according to proof, including emotional distress, loss of security,
6    and out-of-pocket expenses.

7    ## FOURTH CLAIM FOR RELIEF

8    ## 42 U.S.C. § 1983 (Deprivation of Due Process)

9    ## (Against all Defendants)

10    84.    Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

11    85.    In the Antioch Police Department letter dated March 28, 2007 directed to Plaintiff
12    Williams' landlord, Defendants Hyde and Schwitters, acting in concert with Defendant Bittner,
13    falsely accused Plaintiff of cohabiting with an adult male person not on Plaintiff's lease, and of
14    causing a nuisance to the surrounding neighborhood thereby damaging Plaintiff's reputation.

15    86.    Defendants' sending of the above-described March 28, 2007 letter was in
16    connection with and in response to Plaintiff Williams' January 21, 2007 request for assistance to
17    curb an immediate threat of domestic violence faced by this Plaintiff. In requesting such
18    assistance, Plaintiff was exercising her First Amendment right to seek redress from the
19    government.

20    87.    In the Antioch Police Department letter dated March 28, 2007 directed to Plaintiff
21    Scott's landlord, Defendants Hyde and Schwitters, acting in concert with Defendants Bittner and
22    Dillard, falsely accused Plaintiff of cohabiting with an adult male not on Plaintiff's lease thereby
23    damaging Plaintiff's reputation.

24    88.    Defendants' sending of the above-described March 28, 2007 letter followed, and
25    was in connection with Defendants' deprivation of Plaintiff Scott's right to be free from
26    unreasonable searches and seizures described in the Second Claim for Relief.

COMPLAINT FOR DAMAGES AND                                      *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF          - 19 -              *City of Antioch et al.*

89. In the Antioch Police Department letter dated March 28, 2007 directed to Plaintiff Payne's landlord, Defendants Hyde and Schwitters, acting in concert with Defendants Dillard and Bittner, falsely accused Plaintiff and/or members of her family residing in her home, of being involved in unspecified criminal activity thereby damaging Plaintiff's reputation.

90. Defendants' sending of the above-described March 28, 2007 letter was in connection with and in response to Plaintiff Payne's repeated requests for assistance to curb immediate threats of domestic violence faced by this Plaintiff. In requesting such assistance, Plaintiff was exercising her First Amendment right to seek redress from the government.

91. As a result of Defendants' March 28, 2007 letter, and a follow-up letter, directed to Plaintiff Payne's landlord, Plaintiff landlord notified Ms. Payne on or about December 10, 2007 of the landlord's intent to terminate Plaintiff Payne's lease, forcing Plaintiff to vacate her home and move to Bay Point.

92. Defendants' actions as set forth above constituted a deprivation of each Plaintiff's liberty and or property, without due process of law.

93. The above- described actions evidenced a custom, policy or practice of Defendants City and APD of sending letters to the landlords of Section 8 voucher participants, accusing the participants of criminal or nuisance behavior, and of alleged violations by the participants of the rules governing the Section 8 voucher program.

94. The above described custom, policy or practice has directly affected, and continues to affect individual members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR HOUSING.

95. As a direct and proximate cause of Defendants' actions, Plaintiffs Williams, Scott, and Payne suffered damages in an amount according to proof, including emotional distress loss of security, and out-of-pocket expenses. In addition, Plaintiff Payne suffered the loss of her home, with resulting special damages, including moving expenses, and associated costs.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## FIFTH CLAIM FOR RELIEF

### California Govt. Code § 11135

### (Against all Defendants)

96.    Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

97.    California Government Code § 11135 provides, in relevant part: "No person in the State of California shall, on the basis of race ... be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is conducted, operated, or administered by the state or by any state agency, is funded directly by the state, or receives any financial assistance from the state."

98.    California Code of Regulations §§ 98101(i)(l) and (2) prohibit recipients of state funding from utilizing criteria or methods of administration which have the effect of discriminating against protected groups.

99.    Plaintiffs are informed or believe that Defendants City and APD are entities or agencies, and the Community Action Team is an activity, receiving financial assistance from the State of California.

100.    The investigative activities of the Community Action Team, in particular the customs, policies, and practices described in paragraphs 46-53, fall disproportionately on African-American participants in the Section 8 Housing Choice Voucher Program, and therefore have had, and will continue to have, the effect of discriminating against Plaintiffs and members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR HOUSING on the basis of race.

101.    As a direct and proximate cause of Defendants' actions, Plaintiffs Williams, Scott, and Payne suffered damages in an amount according to proof, including emotional distress, loss of security, and out-of-pocket expenses. In addition, Plaintiff Payne suffered the loss of her home, with resulting special damages, including moving expenses, and associated costs.

1

## SIXTH CLAIM FOR RELIEF

2

### Common Law Libel

3

### (Against all Defendants)

4

102. Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

5

103. In sending the above-described letters to the landlords of Plaintiffs Williams, Scott

6

and Payne, Defendants uttered false, defamatory, or unprivileged statements, including

7

allegations which could reasonably be understood to suggest that each Plaintiff had committed a

8

crime, or was engaged in immoral or unlawful activity. These statements tended to injure

9

Plaintiff's reputation.

10

104. Defendants' above-described actions were intentional.

11

105. As a direct and proximate cause of Defendants' actions, Plaintiffs Williams, Scott,

12

and Payne suffered damages in an amount according to proof, including emotional distress, loss

13

of security, and out-of-pocket expenses.

14

106. Defendants have carried out, and will continue to carry out their custom, policy or

15

practice of sending similar letters to the landlords of Section 8 Housing Choice Voucher

16

participants, including members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR FAIR

17

HOUSING.

18

## SEVENTH CLAIM FOR RELIEF

19

### Intentional Infliction of Emotional Distress

20

### (Against all Defendants)

21

107. Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

22

108. The conduct of Defendants was outrageous and directed at Plaintiffs. Defendants'

23

conduct was intended to cause injury or was in reckless disregard of the probability of causing

24

injury to Plaintiffs and did in fact cause Plaintiffs serious emotional distress.

25

26

COMPLAINT FOR DAMAGES AND                                              *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF          - 22 -                        *City of Antioch et al.*

1    109. As a direct and proximate cause of Defendants' actions, Plaintiffs have suffered

2    damages in an amount according to proof, including emotional distress, loss of security, and out-

3    of-pocket expenses.

4                              **EIGHTH CLAIM FOR RELIEF**

5                                      **Negligence**

6                              **(Against All Defendants)**

7    110. Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

8    111. At all relevant times, Defendants owed Plaintiffs the duty to act with reasonable

9    care and not cause personal injury or loss or damage to Plaintiffs' property or interest in

10   property. Defendants owed Plaintiffs the legal duty not to discriminate against them on the basis

11   of their race or color. Defendants owed Plaintiffs the legal duty not to violate their constitutional

12   rights. Defendants also owed Plaintiff the duty to adequately train and supervise Defendants'

13   employees, and to adopt and/or enforce policies and procedures for the proper hiring, training,

14   and supervision of Defendants' employees.

15   112. By their acts and omissions, Defendants breached the above mentioned duties owed

16   to Plaintiffs. Further, it was reasonably foreseeable that their breach of duty would cause

17   emotional harm to Plaintiffs and the loss of or damage to Plaintiffs' property and/or interest in

18   property.

19   113. As a direct and proximate cause of Defendants breach of their legal duties towards

20   Plaintiffs, Plaintiffs have suffered and will continue to suffer emotional distress and the loss or

21   damage to property and/or interest in property in an amount according to proof.

22                              **NINTH CAUSE OF ACTION**

23                    **Tortious Interference With Contractual Relationship**
                                **(Against All Defendants)**
24

25   114. Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

26

COMPLAINT FOR DAMAGES AND                                    *Antioch Section 8 Families v.*
INJUCTIVE AND DECLARATORY RELIEF        - 23 -              *City of Antioch et al.*

1    115. At all times prior to her vacating the premises, Plaintiff Payne and her landlord had

2    a valid contract for the rental of 1975 Mokelumne Drive, Antioch, California. Implied in the

3    contract was a covenant of good faith and fair dealing between the Plaintiff and her landlord.

4    116. In sending Plaintiff's landlord the above described letters containing unsupported

5    allegations that Plaintiff and her family had engaged in criminal or unlawful activity on the

6    premises, Defendants induced the landlord to terminate the lease with Defendant, procuring a

7    breach by the landlord of the covenant of good faith and fair dealing owed to Plaintiff.

8    117. As a direct and proximate cause of Defendants' actions, Plaintiff Payne was forced

9    to vacate her home and suffered damages in an amount according to proof, including emotional

10   distress, loss of security, and out-of-pocket expenses.

11                              **CLAIMS FOR EQUITABLE RELIEF**

12   118. Plaintiffs incorporate by reference the allegations set forth in the paragraphs above.

13   119. A dispute has broken out between each Plaintiff and each Defendant as to their

14   respective duties under the Fair Housing Act, the First, Fourth, and Fourteenth Amendments to

15   the United States Constitution, and California Government Code § 11135 and as to whether

16   Defendants' actions violated any of these laws. Plaintiffs therefore seek judicial declarations

17   setting forth their respective rights and duties under these laws.

18   120. Defendants' actions described in the paragraphs above violate the Fair Housing

19   Act, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and

20   California Government Code § 11135. Defendants will continue these practices and will directly

21   affect each Plaintiff and the members of Plaintiff ANTIOCH SECTION 8 FAMILIES FOR

22   FAIR HOUSING unless enjoined by this Court.

23   121. Plaintiffs have no plain, speedy, or adequate remedy at law to redress these

24   violations other than an injunction issued by this Court.

25   122. Plaintiffs are indigent, and if an injunction issues the Court should waive the

26   posting of bond.

1    WHEREFORE, Plaintiffs pray for the following relief:

2       1.    For an order enjoining Defendants, in investigating complaints of disturbance or

3               nuisance in dwelling units, from violating the Fair Housing Act, the First, Fourth,

4               and Fourteenth Amendments to the United States Constitution, and California

5               Government Code § 11135;

6       2.    For a judicial declaration that Defendants' actions as alleged in this complaint

7               violate the Fair Housing Act, the First, Fourth, and Fourteenth Amendments to the

8               United States Constitution, and California Government Code § 11135;

9       3.    For compensatory, special and statutory damages according to proof;

10      4.    For punitive damages against Defendants Schwitters, Bias, Bittner and Dillard;

11      5.    For costs of suit; and

12      6.    For such other and further relief as this Court deems reasonable.

13

14                           **Demand for Jury Trial**

15   In accordance with Fed. R. Civ. P. Rule 38(b), and Northern District Local Rule 3-6,

16   Plaintiffs hereby demand a jury trial on all issues triable by jury.

17

18   DATED: May 2, 2008                          BAY AREA LEGAL AID

19

20                                      By

                                         David M. Levin (SBN 193801)

21                                        Attorneys for Plaintiffs

22

23

24

25

26

COMPLAINT FOR DAMAGES AND
INJUCTIVE AND DECLARATORY RELIEF      - 25 -             *Antioch Section 8 Families v.*
*City of Antioch et al.*