JAMES V. FITZGERALD, III (State Bar No. 55632)
THOMAS G. BEATTY (State Bar No. 75794)
NOAH G. BLECHMAN (State Bar No. 197167)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
CITY OF ANTIOCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTEYA DANYELL WILLIAMS; MARY RUTH SCOTT; KAREN LATREECE COLEMAN; PRISCILLA BUNTON, and ALYCE DENISE PAYNE, on behalf of themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CITY OF ANTIOCH, <br><br> Defendant. | Case No. C08-02301 SBA <br><br> **ANSWER TO FIRST AMENDED COMPLAINT** |

This answer is being submitted by Defendant CITY OF ANTIOCH, hereinafter referred to as (Antioch).

## INTRODUCTION

1. In answering the allegations in Paragraphs 1 through 4, Antioch responds as follows. Antioch admits that in the last five years the African-American population in the City of Antioch has increased. Antioch further admits that the Antioch Police Department created a special unit, entitled the Community Action Team to address issues created by problem properties, both residential and commercial, in Antioch. Members of the Community Action Team respond to problem properties, identify issues of concern, communicate those issues to the property owner, or in the case of a landlord-tenant situation to the property manager and the

ANSWER TO FIRST AMENDED COMPLAINT

property owner of the subject property. Under circumstances where other public agencies are involved, including the Housing Authority, this information is also provided to the public agency. Antioch denies the remaining allegations in Paragraphs 1 through 4.

## JURISDICTION AND VENUE

2.	In answering the allegations in Paragraphs 5 through 7, Antioch neither admits or denies the allegations in Paragraphs 5 through 7 as they are matters of law and not appropriate for admission or denial.

## INTRADISTRICT ASSIGNMENT

3.	In answering the allegations in Paragraph 8, Antioch neither admits or denies the allegations in Paragraph 8 as they are matters of law and not appropriate for admission or denial.

## PARTIES

4.	In answering the allegations in Paragraphs 9 through 14, Antioch lacks sufficient information and belief to respond and thereby denies the allegations in Paragraphs 8 through 14.

5.	In answering the allegations in Paragraph 15 and 16, Antioch admits the City of Antioch is a Municipal Corporation which is responsible for the Antioch Police Department ("APD") pursuant to the laws of the State of California. Antioch denies the remaining allegations in Paragraph 15 and 16.

## CLASS ALLEGATIONS

6.	In answering the allegations in Paragraphs 17 through 23, Antioch denies the allegations in Paragraphs 17 through 23.

## THE SECTION 8 HOUSING CHOICE VOUCHER PROGRAM

7.	In answering the allegations in Paragraphs 24 through 31, Antioch neither admits or denies the allegations in Paragraphs 24 through 31 as they are matters of law and not appropriate for admission or denial. Additionally, in answering the allegations in Paragraph 25 regarding statistics, Antioch lacks information and belief and thereby denies the allegations in Paragraph 25.

## THE CITY OF ANTIOCH AND THE COMMUNITY ACTION TEAM

8.	In answering the allegations in Paragraphs 32, Antioch lacks information and

belief and thereby denies the allegations in Paragraph 32.

9. In answering the allegations in Paragraph 33, Antioch responds as follows. The comments attributed to the City Officials were reported in newspaper articles. Other comments were made by City Officials. Antioch denies the remaining allegations in Paragraph 33.

10. In answering the allegations in Paragraph 34, Antioch responds as follows. The comments attributed to the City Officials were reported in newspaper articles. Other comments were made by City Officials. With reference to the November, 2006 "report" referred to, at this time Antioch is unclear as to what is being referred to so it lacks information and belief to respond this allegation and thereby denies it. Antioch denies the remaining allegations in Paragraph 34.

11. In answering the allegations in Paragraph 35, Antioch responds as follows. Antioch admits that it initially attempted to obtain a list of all Section 8 properties when the Housing Authority asked to be informed of problems at its vouchered properties but Antioch has never been provided one. The comments attributed to City Officials were reported in newspaper articles. Other comments were made by City Officials. Antioch denies the remaining allegations in Paragraph 35.

12. In answering the allegations in Paragraph 36, Antioch responds as follows. The comments attributed to City Officials were reported in newspaper articles. Other comments were made by City Officials. Antioch lacks information and belief and thereby denies the allegations relating to signs on the doors of a number of renters in the City. Antioch denies the remaining allegations in Paragraph 36.

13. In answering the allegations in Paragraph 37, Antioch responds as follows. Antioch admits that the Antioch Police Department created a unit called the Community Action Team within the Police Department to address "quality of life" issues in the City of Antioch particularly as they related to problem properties whether or not they were residential or commercial. Antioch denies the remaining allegations in Paragraph 37.

14. In answering the allegations in Paragraph 38, Antioch responds as follows. The comments attributed to the City Officials were reported. These reported comments were part of

ANSWER TO FIRST AMENDED COMPLAINT          3

other comments made by City Officials.  Antioch denies the remaining allegations in Paragraph 38.

      15. In answering the allegations in Paragraph 39, Antioch responds as follows.  Council members were in attendance at a December 18, 2007 meeting and responded to the claims of Bay Area Legal Aid during public comments.  The comments quoted were made in the broader context of increasing crime rates and issues relating to crime.  These comments were part of other comments made by City Officials.  Antioch denies the remaining allegations in Paragraph 39.

      16. In answering the allegations in Paragraphs 40 through 44, Antioch admits the allegations in Paragraphs 40 through 44.

## DEFENDANT'S CUSTOM, POLICIES AND PRACTICES

      17. In answering the allegations in Paragraphs 45 through 58, Antioch responds as follows.  Antioch admits that the Community Action Team was established to investigate complaints of crime, disturbance, nuisance, and quality of life issues occurring in and at both residential and commercial problem properties in the City of Antioch.  The complaints came from a variety of sources, most often from neighbors.  Sometimes Antioch Police Officers other than Officers involved on the Community Action Team, who had been involved in responding to 911 calls, responding to complaints and conducting investigations, referred some of these problem properties to the Community Action Team for further investigation.  As part of their investigation of problem properties, the Community Action Team compiled records of calls for service to the problem property and forwarded information to the property owner and/or property manager as evidence of criminal activity, or activity that threatens the health, safety, or right to peaceful enjoyment of other residents and neighbors.  As part of their investigation of problem properties, members of the Community Action Team would communicate to landlords and property managers and advise that they could be held legally responsible for creating or allowing criminal or nuisance activity to continue.  Sometimes these communications were followed up with telephone calls or visits to landlords.  Some of the problem residential properties were subsequently identified as households participating in the Section 8 housing choice voucher

ANSWER TO FIRST AMENDED COMPLAINT    4

program. Accordingly, information regarding calls for service would also be forwarded to the Housing Authority. During the course of the investigation of these problem properties, members of the Antioch Police Department also have utilized the parolee or probationer status of a person residing with or having a relationship with or to a resident of a problem property, including Section 8 voucher participants, to provide a lawful basis to search the problem property. Antioch lacks information and belief and thereby denies the allegation "unfounded referral" in Paragraph 48. Antioch denies the remaining allegations in Paragraphs 45 through 58.

## CLAIM OF PLAINTIFF SANTEYA DANYELL WILLIAMS

18.   In answering the allegations in Paragraph 59, Antioch lacks information and belief and thereby denies the allegations in Paragraph 59.

19.   In answering the allegations in Paragraph 60, Antioch responds as follows. APD responded to the residence on 1/21/07 for a domestic disturbance between Plaintiff Santeya Williams and an unauthorized resident Julius Batieste. Upon the arrival of APD, Batieste was no longer at the residence. Probable cause was established by the responding Officers to arrest Batieste for felony domestic violence. An emergency protective order, (EPO), preventing Batieste from returning to the residence was granted by a Judge. A BOLO (be on the lookout) advising of the probable cause and the EPO was placed on the APD briefing board. (APD report C07-754). Antioch lacks information and belief and thereby denies the allegation that the call was made by Plaintiff Williams' son. Antioch denies the remaining allegations in Paragraph 60.

20.   In answering the allegations in Paragraph 61, Antioch responds as follows. During morning briefing on 1/22/07, the Community Action Team was advised of the BOLO. It was common practice for the Community Action Team to occasionally assist with serving probable cause declarations, emergency protective orders, and warrants. While preparing to locate Batieste it was found that Batieste was residing with Plaintiff Williams, who was receiving Section 8 assistance. It was common practice for the Community Action Team to document this type of information, so the Community Action Team created APD event 07-06989. Antioch denies the remaining allegations in Paragraph 61.

21.   In answering the allegations in Paragraph 62, Antioch responds as follows. On

ANSWER TO FIRST AMENDED COMPLAINT     5

1/22/07, the Community Action Team discovered that Batieste had spoken with APD Officers on the telephone after the domestic disturbance had occurred. During the conversation Batieste told APD Officers that he had been living with Plaintiff Williams for the past five months. The Community Action Team also discovered that the EPO ordered Batieste to move out of Williams' residence. Sergeant Schwitters and Officer Bittner responded to Williams' residence on 1/22/07 to locate Batieste. Plaintiff Williams answered the door. The Officers advised her that they were looking for Batieste and Plaintiff Williams told them that he was not at the residence. The Officers asked Plaintiff Williams if they could check the interior of her residence for Batieste and she said yes. The Officers checked the residence and did not locate Batieste. While looking for Batieste the Officers checked several closets because it is common for people to hide in closets. At no point did the Officers open any of Plaintiff Williams' drawers. Antioch denies the remaining allegations in Paragraph 62.

22. In answering the allegations in Paragraph 63, Antioch responds as follows. It was determined that APD had also responded to Plaintiff Williams' residence on five separate occasions for issues regarding her two pit-bulls. On one occasion Plaintiff Williams' neighbor placed Williams under citizen arrest for excessive noise cause by her pit-bulls. It is common practice for the Community Action Team to notify landlords of any activity at their property. A letter was sent to Plaintiff Williams' landlord including the quoted language advising of the unauthorized resident and the disturbance involving the pit-bulls. Antioch denies the remaining allegations in Paragraph 63.

23. In answering the allegations in Paragraph 64, Antioch responds as follows. Officer Bittner attended a Section 8 hearing involving Williams on 4/24/07. Antioch lacks information and belief and thereby denies the remaining allegations in Paragraph 64.

24. In answering the allegations in Paragraph 65, Antioch denies the allegations in Paragraph 65.

### CLAIM OF PLAINTIFF MARY RUTH SCOTT

25. In answering the allegations in Paragraph 66, Antioch lacks information and belief and thereby denies the allegations in Paragraph 66.

ANSWER TO FIRST AMENDED COMPLAINT          6

26. In answering the allegations in Paragraph 67, Antioch responds as follows. The Community Action Team was advised by an APD patrol officer that there had been numerous disturbances at Plaintiff Scott's residence. The Community Action Team checked the calls for service to the residence and found that APD had responded to Scott's residence eleven times, primarily for family disturbances, from March 2006 to December 2006. Antioch denies the remaining allegations in Paragraph 67/

27. In answering the allegations in Paragraph 68, Antioch responds as follows. It was determined that Plaintiff Scott's husband, Tyrone Young, an unauthorized resident, was living at the residence with Scott. Young had an outstanding felony warrant, which listed 5123 Canada Hills Drive as his residence. DMV records and APD records also listed 5123 Canada Hills Drive as Young's residence. Young was on active felony probation in Contra Costa County with a full search clause. On 1/16/07, the Community Action Team responded to Plaintiff Scott's residence in order to locate Young. Plaintiff Scott was contacted at the front door and told the Community Action Team that Young was *not* at the residence. Plaintiff Scott was advised of Young's arrest warrant and was also advised of his probation status. Young was located in Plaintiff Scott's bedroom and was placed under arrest for the warrant, possession of marijuana, violation of probation, and violation of a restraining order. It was apparent that Young was currently residing at the residence. Antioch denies the remaining allegations in Paragraph 68.

28. In answering the allegations in Paragraph 69, Antioch responds as follows. Antioch admits that on 1/18/07, Officer Bittner advised the Contra Costa County Housing Authority of the information discovered including some of the information described in Paragraph 69. The letter stated that Officer Bittner believed that Young was an unauthorized resident which is a violation of the Family Obligations form provided by the Housing Authority. Antioch denies the remaining allegations in Paragraph 69.

29. In answering the allegations in Paragraph 70, Antioch responds as follows. Antioch admits that on 3/28/07, a letter was sent to Plaintiff Scott's landlord advising of the information discovered. Portions of that letter are quoted in Paragraph 70. Antioch denies the remaining allegations in Paragraph 70.

ANSWER TO FIRST AMENDED COMPLAINT        7

30. In answering the allegations in Paragraph 71, Antioch responds as follows. Officer Bittner did speak with Plaintiff Scott's landlord regarding the letter that was sent. Officer Bittner did contact Scott's landlord on numerous occasions, but not solely because of Plaintiff Scott. The landlord owns approximately nine rental homes in Antioch. Five of the rental homes have come to the attention of the Community Action Team. Scott's landlord has also called the Community Action Team on several occasions asking the Community Action Team for assistance regarding his rental homes. At no point did Officer Bittner tell the landlord to be careful about renting to African-American tenants. Antioch denies the remaining allegations in Paragraph 71.

31. In answering the allegations in Paragraph 72, Antioch responds as follows. Officer Bittner attended a section 8 hearing involving Plaintiff Scott on 4/26/08. Antioch lacks information and belief and thereby denies the remaining allegations in Paragraph 72.

32. In answering the allegations in Paragraph 73, Antioch denies the allegations in Paragraph 73.

## CLAIM OF PLAINTIFF KAREN LATREECE COLEMAN

33. In answering the allegations in Paragraph 74, Antioch lacks information and belief and thereby denies the allegations in Paragraph 74.

34. In answering the allegations in Paragraph 75, Antioch responds as follows. On 6/13/07, the Community Action Team was contacted by a Contra Costa County Welfare Fraud Investigator. The Investigator advised that he was investigating Plaintiff Coleman for welfare fraud and was recently contacted by Plaintiff Coleman's neighbors, who told him that Plaintiff Coleman and her husband were harassing them. The neighbors then contacted the Community Action Team and stated that Plaintiff Coleman and her husband had been continually harassing and threatening their family. They also advised that they had obtained a restraining order against Plaintiff Coleman's husband and requested that the Community Action Team assist them with serving the order. Plaintiff Coleman's husband, Thomas Coleman, was found to be on active California Department of Corrections parole. Thomas, an unauthorized resident, had been living at the residence for approximately three years according to the neighbors. The neighbors provided the Community Action Team with surveillance recordings, which showed Thomas at the

ANSWER TO FIRST AMENDED COMPLAINT     8

residence on a daily basis. The Community Action Team also located a boat parked in the driveway of the residence that was registered to Thomas. A parole search was performed at the residence on 6/20/07. Upon the Community Action Team's arrival Plaintiff Coleman answered the door and told the Community Action Team Officers that Thomas was <u>not</u> home. She refused to allow the Officers in the residence even though they advised her that they were performing a parole search. Thomas was then seen entering the living room of the residence from the master bedroom. The Officers entered the residence and had to detain Plaintiff Coleman in handcuffs because she was not listening to the Officers' commands and interfering with the Officers. Plaintiff Coleman could have been arrested for violation of California Penal Code § 148, but the Officers decided to only give her a warning. There was no need for Plaintiff Coleman to call APD because the Antioch Officers were in full uniform and a supervisor was on scene. Thomas' parole agent was contacted prior to the search and was advised that the search would be performed. The parole officer did not deny the search. Thomas was served with the restraining order and stated that he had been living at the residence for six months. (APD report C07-6290). Antioch denies the remaining allegations in Paragraph 75.

35. In answering the allegations in Paragraph 76, Antioch responds as follows. On 6/27/07, Officer Bittner wrote the Contra Costa County Housing Authority advising of the information discovered some of which is referred to in Paragraph 76. Antioch denies the remaining allegations in Paragraph 76.

36. In answering the allegations in Paragraph 77, Antioch lacks information and belief and thereby denies the allegations in Paragraph 77.

37. In answering the allegations in Paragraph 78, Antioch responds as follows. On 7/3/07, Officer Bittner responded to Plaintiff Coleman's residence to serve Thomas with a new restraining order. The restraining order was obtained from the neighbors and they requested that APD assist them with service. Plaintiff Coleman advised that Thomas was at work, so Officer Bittner responded to Thomas' work, which was down the street from the residence. Officer Bittner served Thomas with the order. Antioch denies the remaining allegations in Paragraph 78.

38. In answering the allegations in Paragraph 79, Antioch responds as follows. The

ANSWER TO FIRST AMENDED COMPLAINT      9

last time the Community Action Team officers had contact with Plaintiff Coleman and her husband was on 7/3/07. If Coleman was contacted by APD during July 2007 or anytime thereafter then it was possibly an APD patrol officer and not a member of the Community Action Team. On 8/11/07, APD patrol officers were dispatched to Plaintiff Coleman's residence for a 911 hang up. The incident could possibly been related to the call. Antioch denies the remaining allegations in Paragraph 79.

39. In answering the allegations in Paragraph 80, Antioch responds as follows. This incident is in relation to the service of the restraining order described in 78. Thomas' employer (Regal Cinemas) did provide Officer Bittner with Thomas' listed address on his employment records. This was the only time Officer Bittner responded to Thomas' place of employment in regards to Thomas. APD has a contract with Thomas' employer and APD officers are assigned to the location several times a week on overtime assignments. Officer Bittner worked overtime assignments at Regal Cinemas on numerous occasions. When he did so, at no point did Officer Bittner make contact with Thomas. Antioch denies the remaining allegations in Paragraph 80.

40. In answering the allegations in Paragraph 81, Antioch admits it wrote to Coleman's landlord but denies the remaining allegations in Paragraph 81.

41. In answering the allegations in Paragraph 82, Antioch denies the allegations in Paragraph 82.

### CLAIM OF PLAINTIFF PRISCILLA BUNTON

42. In answering the allegations in Paragraph 83, Antioch lacks information and belief and thereby denies the allegations in Paragraph 83.

43. In answering the allegations in Paragraph 84 and 85, Antioch responds as follows. On 9/4/06, the Community Action Team received a neighbor complaint regarding continual loud noise coming from Plaintiff Bunton's residence. On 9/25/06, the Community Action Team responded to the residence to speak with Plaintiff Bunton about the complaint. While the Community Action Team officers were approaching the residence, Plaintiff Bunton's boyfriend, Keith Carter, an unauthorized resident, arrived on his bicycle. He was contacted and found to

ANSWER TO FIRST AMENDED COMPLAINT     10

have a warrant. Carter did not have any form of identification on his person and said that his identification was possibly inside Bunton's residence. The Community Action Team contacted Bunton, explained the situation and asked her if they could attempt to locate Carter's identification inside her residence. Bunton told Officer Dillard that he could enter the residence. Officer Dillard entered the residence with Bunton in an attempt to locate Carter's identification. While he was looking for identification Officer Dillard noticed several items belonging to Carter. It is unknown if Carter was a parolee at the time. If he was, APD was not aware and were not informed by either Carter or Dispatch. Carter admitted to living at the residence for approximately three months and his DMV records later listed the location as his residence. (APD report C06-9645). Antioch denies the remaining allegations in Paragraph 84 and 85.

44.  In answering the allegations in Paragraph 86, Antioch responds as follows. Antioch admits the allegations in Paragraph 86.

45.  In answering the allegations in Paragraph 87, Antioch incorporates its responses to Paragraphs 85 and 86. Antioch lacks information and belief and thereby denies the allegations relating to the Housing Authority proceedings. Antioch denies the remaining allegations in Paragraph 87.

46.  In answering the allegations in Paragraph 88, Antioch lacks information and belief and thereby denies the allegations in Paragraph 88.

47.  In answering the allegations in Paragraph 89, Antioch denies the allegations in Paragraph 89.

### CLAIM OF PLAINTIFF ALYCE DENISE PAYNE

48.  In answering the allegations in Paragraph 90, Antioch denies the allegations in Paragraph 90.

49.  In answering the allegations in Paragraph 91, Antioch responds as follows. APD

ANSWER TO FIRST AMENDED COMPLAINT    11

1  had responded to Plaintiff Payne's residence approximately thirty four times primarily for family
2  disturbances from June 2003 to October 2006. The disturbances were related to two different
3  homes Plaintiff Payne resided in on the same street. On 2/21/07, the Community Action Team
4  received a complaint regarding continual disturbances at Payne's residence. On 3/6/07, the
5  Community Action Team contacted Plaintiff Payne and advised her of the complaint. This was
6  the only contact the Community Action Team had with Plaintiff Payne. The Community Action
7  Team conducted an investigation on the activity of Payne and her family and discovered that
8  Payne and members of her household had been arrested for criminal activity. Antioch denies the
9  remaining allegations in Paragraph 91.

50. In answering the allegations in Paragraph 92, Antioch responds as follows. On 3/21/07, Officer Dillard wrote a letter dated March 21, 2007 to the Contra Costa County Housing Authority advising of the information discovered, only some of which is referred to in Paragraph 92. At the time of the disclosure, Plaintiff Payne's daughter was eighteen years old. Antioch denies the remaining allegations in Paragraph 92.

51. In answering the allegations in Paragraph 93, Antioch responds as follows. Antioch admits that a letter was sent on March 21, 2007 to the Housing Authority. Antioch lacks information and belief and thereby denies the allegations regarding the Housing Authority proceedings. Antioch denies the remaining allegations in Paragraph 93.

52. In answering the allegations in Paragraph 94, Antioch responds as follows. Antioch admits that on 3/28/07, Plaintiff Payne's landlord was notified via letter regarding the information discovered and a landlord's responsibility under the circumstances. Some of the information provided is reflected in Paragraph 94.

53. In answering the allegations in Paragraph 95, Antioch responds as follows. On 3/20/07, the landlord was notified via telephone regarding the information discovered. Landlords also often request a letter or something in writing, so they can document the contact. Antioch denies the remaining allegations in Paragraph 95.

54. In answering the allegations in Paragraph 96, Antioch responds as follows. On 10/4/07, the landlord was sent a second letter due to additional problems at the residence. Since

ANSWER TO FIRST AMENDED COMPLAINT        12

the earlier letter was sent in March of 2007, APD had responded to the residence eleven additional times for disturbances and received three separate neighbor complaints. Of the eleven new disturbances at the residence, three resulted in arrests. Paragraph 96 contains some of the information provided to the landlord. Antioch denies the remaining allegations in Paragraph 96.

55. In answering the allegations in Paragraph 97, Antioch lacks information and belief and thereby denies the allegations in Paragraph 97.

56. In answering the allegations in Paragraph 98, Antioch lacks information and belief and thereby denies the allegations of Paragraph 98.

## NOTICE OF PLAINTIFFS' CLAIMS

57. In answering the allegations in Paragraph 99, Antioch denies the allegations in Paragraph 99 as they are matters of law and not appropriate for admission or denial.

## FIRST CLAIM FOR RELIEF

### 42 U.S.C. § 3617 (Violation of Fair Housing Act)

### (On behalf of Individual Plaintiffs and Class Against Defendant)

58. In answering the allegations in Paragraph 100, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

59. In answering the allegations in Paragraph 101, Antioch denies the allegations in Paragraph 101 as they are matters of law and not appropriate for admission or denial.

60. In answering the allegations in Paragraphs 102 through 105, Antioch denies the allegations in Paragraphs 102-105.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Denial of Equal Protection)

### (On behalf of Individual Plaintiffs and Class Against Defendant)

61. In answering the allegations in Paragraph 106, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

62. In answering the allegations in Paragraph 107 through 109, Antioch denies the allegations in Paragraph 107 through 109.

ANSWER TO FIRST AMENDED COMPLAINT    13

### THIRD CLAIM FOR RELIEF

### 42 U.S.C. § 1983 (Violation of Fourth Amendment)

### (On behalf of Individual Plaintiffs and Class Against Defendant)

63. In answering the allegations in Paragraph 110, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

64. In answering the allegations in Paragraphs 111 and 112, Antioch denies the allegations in Paragraph 111 and 112.

### FOURTH CLAIM FOR RELIEF

### Cal. Const. art. I, § 7 (Denial of Equal Protection)

### (On behalf of Individual Plaintiffs and Class Against Defendant)

65. In answering the allegations in Paragraph 113, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

66. In answering the allegations in Paragraph 114, Antioch denies the allegations in Paragraph 114.

### FIFTH CLAIM FOR RELIEF

### California Gov't Code § 11135 and Its Implementing Regulations

### (On behalf of Individual Plaintiffs and Class Against Defendant)

67. In answering the allegations in Paragraph 115, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

68. In answering the allegations in Paragraphs 116 through 118, Antioch neither admits or denies the allegations in Paragraphs 116 through 118 as they are matters of law and not appropriate for admission or denial.

69. In answering the allegations in Paragraph 119, Antioch denies the allegations in Paragraph 119.

### SIXTH CLAIM FOR RELIEF

### California Gov't Code § 12940, et seq. (Violation of California Fair Employment & Housing Act)

### (On behalf of Individual Plaintiffs and Class Against Defendant)

70. In answering the allegations in Paragraph 120, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

71. In answering the allegations in Paragraph 121, Antioch neither admits or denies the allegations in Paragraph 121 as they are matters of law and not appropriate for admission or denial.

72. In answering the allegations in Paragraph 122, Antioch denies the allegations in Paragraph 122.

### SEVENTH CLAIM FOR RELIEF

Cal. Const. art. I, § 13

(On behalf of Individual Plaintiffs and Class Against Defendant)

73. In answering the allegations in Paragraph 123, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

74. In answering the allegations in Paragraphs 124 and 125, Antioch denies the allegations in Paragraphs 124 and 125.

### EIGHTH CLAIM FOR RELIEF

California Civil Code § 52.1 (Violation of the Bane Act)

(On behalf of Individual Plaintiffs and Class Against Defendant)

75. In answering the allegations in Paragraph 126, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

76. In answering the allegations in Paragraphs 127 and 128, Antioch neither admits or denies the allegations in Paragraphs 127 and 128 as they are matters of law and not appropriate for admission or denial.

77. In answering the allegations in Paragraphs 129 and 130, Antioch denies the allegations in Paragraphs 129 and 130.

### NINTH CLAIM FOR RELIEF

Intentional Infliction of Emotional Distress

(On behalf of Individual Plaintiffs and Class Against Defendant)

78. In answering the allegations in Paragraph 131, Antioch incorporates by reference

its responses to the allegations set forth in the paragraphs above.

79. In answering the allegations in Paragraph 132, Antioch denies the allegations in Paragraph 132.

## TENTH CLAIM FOR RELIEF

### Negligent Infliction of Emotional Distress

### (On behalf of Individual Plaintiffs and Class Against Defendant)

80. In answering the allegations in Paragraph 133, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

81. In answering the allegations in Paragraphs 134 and 135, Antioch denies the allegations in Paragraphs 134 and 135.

## ELEVENTH CLAIM FOR RELIEF

### Tortious Interference With Contractual Relationship

### (On behalf of Individual Plaintiffs and Class Against Defendant)

82. In answering the allegations in Paragraph 136, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

83. In answering the allegations in Paragraphs 137 through 141, Antioch denies the allegations in Paragraphs 137 through 141.

## RELIEF ALLEGATIONS

84. In answering the allegations in Paragraph 142, Antioch incorporates by reference its responses to the allegations set forth in the paragraphs above.

85. In answering the allegations in Paragraphs 143 through 148, Antioch denies the allegations in Paragraphs 143 through 148.

## AFFIRMATIVE DEFENSES

1. AS AND FOR A FIRST, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that said Complaint fails to state facts sufficient to constitute a claim against this answering Defendant.

2. AS AND FOR A SECOND, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that at all times and places mentioned in the Complaint herein, the

1  Plaintiffs failed to mitigate the amount of their damages, if any. The damages claimed by
2  Plaintiffs could have been mitigated by due diligence on their part or by one acting under similar
3  circumstances. The Plaintiffs' failure to mitigate is a bar to their recovery under the Complaint.

4     3.    AS AND FOR A THIRD, SEPARATE AND AFFIRMATIVE DEFENSE, this
5  answering Defendant alleges that Plaintiffs' own negligence in and about the matters alleged in
6  their Complaint herein was the sole proximate cause of the happening of the incident, and of the
7  injuries, loss and damages complained of, if any there were, and said negligence on the part of
8  Plaintiffs bars recovery to Plaintiffs or, in the alternative, that said Plaintiffs' negligence in and
9  about the matters alleged in the Complaint herein proximately contributed to the happening of the
10 incident and to the injuries, loss and damages complained of, if any there were, and said
11 negligence on the part of Plaintiffs requires that any damages awarded Plaintiffs shall be
12 diminished as required by the law of the State of California in proportion to the amount of fault
13 attached to said Plaintiffs.

14     4.    AS AND FOR A FOURTH, SEPARATE AND AFFIRMATIVE DEFENSE, this
15 answering Defendant alleges that the sole proximate cause of the injuries and damages, if any,
16 allegedly suffered by Plaintiffs was the negligence and fault of others than this answering
17 Defendant or on the part of any person or entity for whose acts or omissions this answering
18 Defendant is legally or otherwise responsible.

19     5.    AS AND FOR A FIFTH, SEPARATE AND AFFIRMATIVE DEFENSE, this
20 answering Defendant alleges that Plaintiffs have failed to state a cause of action in that each of
21 the causes of action as alleged herein is barred by provisions of Sections 312 through 362 of the
22 California Code of Civil Procedure.

23     6.    AS AND FOR A SIXTH, SEPARATE AND AFFIRMATIVE DEFENSE, this
24 answering Defendant alleges that Plaintiffs had full knowledge of all the risks, dangers, and
25 hazards, if any there were, and nevertheless voluntarily and with full appreciation of the amount
26 of danger involved in his actions and the magnitude of the risk involved, assumed the risk of
27 injuries and damages to themselves.
28

ANSWER TO FIRST AMENDED COMPLAINT     17

7.  AS AND FOR A SEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that Plaintiffs' unclean hands preclude any recovery by Plaintiffs.

8.  AS AND FOR A EIGHTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that the Plaintiffs by virtue of their own conduct and omissions have enhanced and materially contributed to the damages, if any there may be, allegedly sustained by Plaintiffs as a result of the acts or omissions complained of herein.

9.  AS AND FOR A NINTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that the matters complained of by Plaintiffs, if committed by Defendant, were consented to by Plaintiffs.

10.  AS AND FOR A TENTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that at all times herein mentioned, the acts complained of, if any there were, were privileged under applicable statutes and case law.

11.  AS AND FOR A ELEVENTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that it is immune from liability herein pursuant to the provisions of California Government Code Sections 810 through 996.6.

12.  AS AND FOR A TWELFTH, SEPARATE AND AFFIRMATIVE DEFENSE, this answering Defendant alleges that only such reasonable force as was necessary and lawful under the circumstances was used by the Defendant's peace officers.

### PRAYER FOR RELIEF

WHEREFORE, Defendant prays for the following relief:

1.  That Plaintiffs take nothing by way of their Complaint herein;

2.  For costs of suit;

3.  For attorney's fees;

4.  For such further relief as this Court may deem just and proper.

ANSWER TO FIRST AMENDED COMPLAINT    18

| | | |
|---|---|---|
| 1 | Dated: August 27, 2008 | MCNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP |
| 2 | | |
| 3 | | By: _____ |
| 4 | | James V. Fitzgerald, III |
| 5 | | Thomas G. Beatty |
| | | Noah G. Blechman |
| | | Attorneys for Defendant |
| 6 | | CITY OF ANTIOCH |

ANSWER TO FIRST AMENDED COMPLAINT         19