1  Impact Fund
   BRAD SELIGMAN (SBN 083838)
2  bseligman@impactfund.org
   JOCELYN D. LARKIN (SBN 110817)
3  125 University Avenue, Suite 102
   Berkeley, CA  94710
4  Telephone:  510.845.3473
   Facsimile:  510.845.3654
5
   Bingham McCutchen LLP
6  FRANK B. KENNAMER (SBN 157844)
   ABIGAIL C. SLONECKER (SBN 252452)
7  abigail.slonecker@bingham.com
   Three Embarcadero Center
8  San Francisco, CA  94111
   Telephone:  415.393.2000
9  Facsimile:  415.393.2286

10 Attorneys for Plaintiffs SANTEYA DANYELL
   WILLIAMS, MARY RUTH SCOTT, KAREN
11 LATREECE COLEMAN, PRISCILLA BUNTON, and
   ALYCE DENISE PAYNE

12 **[Additional Counsel Listed on Signature Page]**

13

14                 UNITED STATES DISTRICT COURT

15              NORTHERN DISTRICT OF CALIFORNIA

16

17 SANTEYA DANYELL WILLIAMS, MARY          No. C-08-2301 SBA
   RUTH SCOTT, KAREN LATREECE
18 COLEMAN, PRISCILLA BUNTON, and          **PLAINTIFFS' OPPOSITION TO**
   ALYCE DENISE PAYNE, on behalf of        **DEFENDANT'S MOTION FOR**
19 themselves and all others similarly situated,   **JUDGMENT ON THE PLEADINGS**

20            Plaintiffs,                   Date:     January 12, 2010
                                           Time:     1 p.m.
21        v.                               Before:   Honorable Saundra Brown
                                                     Armstrong
   CITY OF ANTIOCH,
22
              Defendant.
23

24

25

26

27

28

                                                   No. C-08-2301 SBA
   ─────────────────────────────────────────────────────────────
   PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1

TABLE OF CONTENTS

2

Page

3

INTRODUCTION .................................................................................................................. 1

4

FACTUAL BACKGROUND ................................................................................................ 2

5

STANDARD OF REVIEW ................................................................................................... 4

6

7

ARGUMENT ......................................................................................................................... 5

8

I.    THIS LAWSUIT IS NOT SUBJECT TO THE CLAIMS REQUIREMENTS OF
      THE GOVERNMENT TORT CLAIMS ACT .......................................................... 5

9

10

      A.    The Government Tort Claims Act is Not Applicable to Cases in Which the
            Primary Objective is to Obtain Injunctive and Declaratory Relief Against
            Unlawful Practices by a Government Entity .......................................................... 5

11

      B.    Courts Require Compliance with the Government Tort Claims Act in
            Lawsuits Whose Chief Purpose is to Obtain Monetary Damages ........................ 7

12

13

      C.    Plaintiffs' and Class' Primary Purpose is to Obtain Injunctive and
            Declaratory Relief Against Defendant's Unlawful and Discriminatory
            Policies and Practices and Thus, the Government Tort Claims Act
            Requirements Do Not Apply ................................................................................. 8

14

15

II.   THE ADMINISTRATIVE CLAIMS FILED BY THE NAMED PLAINTIFFS
      ALLEGE CLASS CLAIMS FOR STATUTORY DAMAGES ................................. 10

16

      A.    Plaintiffs' Government Tort Claims Allege a Class Claim ................................. 10

17

      B.    Defendant Improperly Conflates the Requirements For the Administrative
            Claims Procedure with the Requirements for Judicial Class Certification in
            the Litigation ...................................................................................................... 12

18

19

      C.    Defendant Had Ample Notice and Opportunity to Investigate Claims on a
            Class-Wide Basis ............................................................................................... 13

20

21

CONCLUSION ..................................................................................................................... 14

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1

TABLE OF AUTHORITIES

2                                                                                                Page

3   **CASES**

4   *Blair v. Super. Ct.*,
5       218 Cal. App. 3d 221 (1990) ........................................................................... 13

6   *California School Employees Ass'n v. Tustin Unified School Dist.*,
        148 Cal. App. 4th 510 (2007) ........................................................................ 11
7
    *Californians for Disability Rights v. Cal. Dept. of Transp.*,
8       249 F.R.D. 334 (N.D. Cal. 2008) ..................................................................... 1

9   *City of San Jose v. Superior Court*,
        12 Cal. 3d 447 (1974) ..................................................................... 7, 11, 12, 13
10
11  *Dworkin v. Hustler Magazine Inc.*,
        867 F.2d 1188 (9th Cir. 1989) ......................................................................... 4
12
    *Eaton v. Ventura Port Dist.*,
13      45 Cal. App. 3d 862 (1975) ............................................................................ 13

14  *Eisen v. Carlisle & Jacquelin*,
        417 U.S. 156 (1974) ......................................................................................... 1
15
16  *Elias v. San Bernardino County Flood Control Dist.*,
        68 Cal. App. 3d 70 (1977) ......................................................................... 12, 13
17
    *Eureka Teacher's Ass'n. v. Bd. of Educ.*,
18      202 Cal. App. 3d 469 (1988) ........................................................................... 5

19  *Fairbanks N. Star Borough v. U.S. Army Corps of Eng'rs*,
        543 F.3d 586 (9th Cir. 2008) ........................................................................... 4
20
21  *Gatto v. County of Sonoma*,
        98 Cal. App. 4th 744 (2002) ..................................................................... *passim*
22
    *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist*
23      *Congregational Church*,
        887 F.2d 228 (9th Cir. 1989) ........................................................................... 5
24
25  *Gibson v. County of Riverside*,
        181 F. Supp. 2d 1057 (C.D. Cal. 2002) ........................................................... 6
26
    *Gilligan v. Jamco Dev. Corp.*,
27      108 F.3d 246 (9th Cir. 1997) ........................................................................... 4

28

ii

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

TABLE OF AUTHORITIES
(continued)

Page

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,*
896 F.2d 1542 (9th Cir. 1990)..............................................................................2, 5, 9

*Indep. Hous. Servs. of San Francisco v. Fillmore Center Assoc.,*
840 F. Supp. 1328 (N.D. Cal. 1993) .............................................................................6, 8

*Loehr v. City of Ventura,*
147 Cal. App. 3d 1071 (1983)........................................................................................8, 9

*Lozada v. City and County of San Francisco,*
145 Cal. App. 4th 1139 (2006) ..................................................................................*passim*

*M.G.M. Const. Co. v. Alameda County,*
615 F. Supp 149 (N.D. Cal. 1985) ...................................................................................5

*Minsky v. City of Los Angeles,*
11 Cal. 3d 113 (1974) ...................................................................................................13

*Oubichon v. North Am. Rockwell Corp.,*
482 F.2d 569 (9th Cir. 1973)..........................................................................................14

*Paige v. State of Cal.,*
102 F.3d 1035 (9th Cir. 1996).........................................................................................14

*Sanchez v. Standard Brand,*
431 F.2d 455 (5th Cir. 1970)...........................................................................................14

*Sandhu v. Lockheed Missiles & Space Co.,*
26 Cal. App. 4th 846 (1994) ..........................................................................................14

*Shoemaker v. Meyers,*
2 Cal. App. 4th 1407 (1992) .....................................................................................11, 12

*Smith v. County of Los Angeles,*
214 Cal. App. 3d 266 (1989)..........................................................................................13

*Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins. Auth.,*
34 Cal. 4th 441 (2004) ..........................................................................................11, 12, 13

*Tong v. Capital Management Servs. Group, Inc.,*
520 F. Supp. 2d 1145 (N.D. Cal. 2007) ..........................................................................5

**STATUTES**

Cal. Civ. Code § 52.1 .........................................................................................................1

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

TABLE OF AUTHORITIES
(continued)

Page

Cal. Civ. Code § 52(a) ..................................................................................... 9

Cal. Gov't Code § 945.4 ........................................................................ 1, 5, 10

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(c) ........................................................................................ 4

Rule 12(b)(6) .................................................................................................... 4

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1          **INTRODUCTION**

2          Defendant's Motion for Judgment on the Pleadings ("Motion") asks this Court to

3   dismiss Plaintiffs' Eighth Claim for Relief insofar as that claim seeks statutory minimum

4   damages under the California Bane Act (Cal. Civ. Code § 52.1) for the class and for Priscilla

5   Bunton, one of the five named plaintiffs.  Defendant's request for a dismissal of claims in this

6   Motion applies to these two, *and only these two*, specific claims.  The sole basis presented in

7   support of the Motion is that plaintiffs failed to file a class government tort claim and Plaintiff

8   Bunton failed to file an individual claim with respect to these two specific damages claims as

9   required by Cal. Gov't Code § 945.4 of the Government Tort Claims Act ("the Tort Claims

10  Act").  Although styled a Motion for Judgment on the Pleadings, Defendant's Motion ignores the

11  allegations and requested relief in the First Amended Complaint.[1]  Both of defendant's

12  arguments should be rejected by this Court for the following reasons:

13          1.      This civil rights case is brought by five named plaintiffs individually and

14  on behalf of a class of Antioch residents who have been and are being targeted by city officials

15  and the Antioch Police Department based on their race and their status as Section 8 tenants.

16  Because this class action case has been primarily brought to obtain declaratory and injunctive

17  relief for these residents to bring a halt to this discriminatory, unlawful, and unconstitutional

18  policy and practice, the lawsuit is not subject to the requirements of the Tort Claims Act, even

19  though the First Amended Complaint ("Complaint") does include a prayer for statutory

20  minimum damages as an ancillary part of the overall relief.  Therefore, any alleged inadequacies

21  in the tort claims filed by the other four named plaintiffs are immaterial.

22          2.      Even if this lawsuit were subject to the administrative claims

23  _____

24  [1] Defendant's motion is not contemplated by the Case Management Order in this case and is arguably a premature attempt to adjudicate the merits of this case prior to class certification.

25  *Californians for Disability Rights v. Cal. Dept. of Transp.*, 249 F.R.D. 334, 345 (N.D. Cal. 2008) (citing *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 (1974)).  *See* Case Management Order

26  (Doc. No. 26 (10/02/2008)). Given the allegations of the First Amended Complaint, the issue of whether there has been compliance with the government claim's statute raises issues of fact more

27  appropriately tested in a summary judgment motion, a motion which would likewise be premature prior to the class certification determination.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1    requirements, plaintiffs complied with the requirements of the Tort Claims Act by filing claims

2    on behalf of the class, alleging an unlawful policy affecting other families like theirs (*i.e.*,

3    African-American Section 8 residents of Antioch).  Since Plaintiff Bunton is a member of the

4    class, her damage claims are not barred by her lack of a claim.

5                                       **FACTUAL BACKGROUND**

6                  Defendant ignores the allegations of the First Amended Complaint, which must be

7    taken as true for purposes of this motion.  *See Hal Roach Studios, Inc. v. Richard Feiner & Co.,*

8    *Inc.,* 896 F.2d 1542, 1550 (9th Cir. 1990).  Plaintiffs allege that the City of Antioch and the

9    Antioch Police Department have engaged in a concerted campaign to reduce the African-

10   American Section 8 population and discourage any additional Section 8 families from moving to

11   Antioch.  (First Amended Complaint ¶ 2.)  Plaintiffs "charge that the City of Antioch

12   intentionally discriminates against African-American Section 8 households on the basis of their

13   race and/or source of income, and has pursued policies and practices that have an unjustified

14   adverse impact upon them."  (*Id.* at ¶ 3.)  As victims of this campaign by defendant, Plaintiffs

15   allege that they have been subjected to a pattern of unlawful and discriminatory policies and

16   practices, including, among other things, the unwarranted and abusive investigations, unfounded

17   complaints to the Housing Authority in an attempt to have Section 8 vouchers revoked, and

18   threatening letters to landlords so as to influence landlords to evict Section 8 tenants.  (*Id.* at ¶ 2.)

19   Additionally, plaintiffs allege that they have been subject to a pattern and practice of illegal

20   searches of their homes.  (*Id.* at ¶ 51.)  Plaintiffs further allege that this pattern and practice of

21   unlawful conduct is ongoing and will continue unless enjoined by this Court.  (*Id.* at ¶¶ 45-58,

22   143.)  All plaintiffs allege they are current recipients of Section 8 benefits.  (*Id.* at ¶¶ 59, 66, 74,

23   83, 90.)  Four of the five plaintiffs allege they are current residents of Antioch, and the fifth,

24   plaintiff Payne, alleges she desires to move back in order to be closer to her disabled son's

25   school.  (*Id.* at ¶¶ 59, 66, 74, 83, 98.)[2]

26   _____

27   [2] Plaintiff Payne has moved back to Antioch since the filing of the First Amended Complaint.
     Payne Declaration in Support of Class Certification ¶ 2.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1          As stated in the introduction of the Complaint, "This class action primarily seeks

2   to end the City's discriminatory and unlawful policies and practices.  This action also seeks

3   statutory minimum damages for the class, and additional damages for the named plaintiffs."

4   (First Amended Complaint ¶¶ 4, 99 ("All damage claims made in [the Complaint] are incidental

5   to and secondary to the injunctive relief claims.").  Specifically, plaintiffs request injunctive

6   relief prohibiting defendant from:

7          1.      Disproportionately targeting class members for criminal investigation on a

8   different basis from similarly situated non-class members;

9          2.      Engaging in, or seeking to engage in, unlawful and pretextual searches of

10   the homes of class members;

11          3.      Handling disturbance or nuisance complaints concerning Section 8

12   households differently from non-Section 8 households;

13          4.      Communicating, in writing or otherwise, false or unlawfully obtained

14   information of criminal and nuisance activity about class members to the Housing Authority of

15   the County of Contra Costa or to class members' landlords;

16          5.      Engaging in communications, written or otherwise, to class members'

17   landlords for the purpose of causing class members' eviction; and

18          6.      Soliciting complaints about class members from their neighbors and

19   others.

20   (*Id.* at ¶ 2.)  On behalf of the class, Plaintiffs only request monetary relief in the form of statutory

21   minimum damages under the California Bane Act.  (*Id.* at 33 ¶ 4.)

22          Plaintiff Bunton alleges conduct by the Antioch police similar to that alleged on

23   behalf of the class.  Bunton alleges that, in September 2006, officers arrived at her home to

24   discuss noise complaints about her household.  (First Amended Complaint ¶ 84.)  However, the

25   officers proceeded to search her home, even though Bunton refused to consent to the search and

26   the officers had no other lawful authority to do so.  (*Id.* at ¶ 85.)  The officers searched her entire

27   home, including drawers, and allegedly found men's clothing and other men's personal items.

28   (*Id.*)  Although Ms. Bunton was fully compliant, the police nonetheless sent a letter to the

3                                                      No. C-08-2301 SBA

1    Housing Authority the day after this event alleging that Ms. Bunton had an unauthorized male

2    resident and that her household had received minor noise complaints, including noise from

3    children playing basketball in the evening.  (*Id.* at ¶ 86.)  As a result of this letter and an Antioch

4    police officer's testimony, Ms. Bunton's Section 8 benefits were terminated.  (*Id.* at ¶ 87.)  Her

5    benefits were later reinstated after a reviewing court found that the hearing officer's findings of

6    fact were not supported by evidence in the record.  (*Id.*)  As a result of this conduct, "[Antioch's

7    police] practices cause Ms. Bunton to fear contacting APD for any purpose and avoid inviting

8    individuals to her home because she might be subjected to further APD interference."  (*Id.* at ¶

9    89.)

10           The First Amended Complaint further states that Plaintiffs Williams, Scott,

11   Coleman, and Payne filed timely notices of claims for money damages against the City pursuant

12   to the Tort Claims Act and that "[e]ach notice alleged that the conduct was part of an illegal

13   policy and practice of discriminatory targeting of African Americans who participate in the

14   Section 8 Voucher Program in Antioch."  (First Amended Complaint ¶ 99; *see, e.g.*, Tort Claim of

15   Mary Ruth Scott, Motion for Judgment on the Pleadings Ex. B1 ("These actions were part of the

16   Department's illegal policy and practice of discriminatory targeting of African-American families

17   like mine who participate in the federal Section 8 housing subsidy program in Antioch."))

18                              **STANDARD OF REVIEW**

19           Motions for judgment on the pleadings under Fed. R. Civ. P. 12(c) and motions to

20   dismiss for failure to state a claim under Rule 12(b)(6) are "functionally identical," and thus the

21   same standard of review applies to both.  *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188,

22   1192 (9th Cir. 1989).  In this Circuit, such a motion is "viewed with disfavor and is rarely

23   granted."  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).

24           "A judgment on the pleadings is properly granted when, taking all the allegations

25   in the pleadings as true, the moving party is entitled to judgment as a matter of law."  *Fairbanks

26   N. Star Borough v. U.S. Army Corps of Eng'rs*, 543 F.3d 586, 591 (9th Cir. 2008) (internal

27   quotation omitted).  In determining a Rule 12(c) motion, the Court must accept the non-moving

28   party's allegations as true and assume the moving party's allegations, which the non-moving

1    party has denied, are false.  *See Hal Roach Studios, Inc.*, 896 F.2d at 1550.  "Moreover, all

2    inferences reasonably drawn from these facts must be construed in favor of the responding

3    party."  *Tong v. Capital Management Servs. Group, Inc.*, 520 F. Supp. 2d 1145, 1147 (N.D. Cal.

4    2007) (*citing Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist*

5    *Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989)).

6                                            **ARGUMENT**

7    **I.      THIS LAWSUIT IS NOT SUBJECT TO THE CLAIMS REQUIREMENTS
8              OF THE GOVERNMENT TORT CLAIMS ACT**

9                    Defendant blithely assumes that this civil rights lawsuit is a case for "money or

10   damages" brought against a public entity within the meaning of Cal. Govt. Code § 945.4.  (*See*

11   Motion at 4-5.)  In doing so, it ignores both the allegations and overall thrust of plaintiffs'

12   complaint, and the case law setting forth the standards courts use to determine whether the non-

13   pecuniary aspects of lawsuits seeking equitable and monetary relief from government entities are

14   within the purview of the claims requirements of the Tort Claims Act.  When this Court takes the

15   actual complaint and the relevant case law into account, it should rule that this lawsuit is not

16   subject to the Tort Claims Act's claims requirements, and thus defendant's arguments to dismiss

17   the damages claims of the class and Ms. Bunton must fail.

18           **A.      The Government Tort Claims Act is Not Applicable to Cases in Which the
19                    Primary Objective is to Obtain Injunctive and Declaratory Relief Against
                      Unlawful Practices By a Government Entity.**

20                   Because Government Code § 945.4 makes filing a claim a prerequisite only to a

21   "suit for money or damages," the requirement does not apply to cases brought "primarily" for

22   injunctive or declaratory relief, even though damages are also part of the relief sought.  *See Gatto*

23   *v. County of Sonoma*, 98 Cal. App. 4th 744, 761 (2002).[3]  In *Gatto*, the court recognized that

24   _____

25   [3] *See also, M.G.M. Const. Co. v. Alameda County*, 615 F. Supp 149, 151 (N.D. Cal. 1985)
     ("[T]he Court is persuaded . . . that the notice of claims provision should not apply . . . since the
     primary relief sought is a declaration that the County's affirmative action program violates state
26   law" and "damages available . . . are relatively small."); *Lozada v. City and County of San*
     *Francisco*, 145 Cal. App. 4th 1139, 1166-68 (2006);  *Eureka Teacher's Ass'n. v. Bd. of Educ.*,
27   202 Cal. App. 3d 469, 474-75 (1988) ("Because . . . claim for backpay and fringe benefits was
     incidental to her request for reemployment[, it]was not a claim for money or damages within the

28                                                                   (Footnote Continued on Next Page.)

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**

1   both state and federal case law agree that Tort Claims Act claims requirements do *not* apply to

2   lawsuits seeking declaratory and injunctive relief, where "the vindication of the present and

3   future rights of a large class of . . . persons was the primary purpose of the litigation, and the

4   money damages they also sought was merely incidental to that overreaching goal." *Id*. at 761.

5          Courts have consistently held that the Tort Claims Act requirement does not apply

6   to lawsuits in which the chief purpose is to vindicate the civil rights of a group of persons by

7   bringing a halt to ongoing unlawful government practices. For example, in *Indep. Hous. Servs.*

8   *of San Francisco v. Fillmore Center Assoc.*, 840 F. Supp. 1328 (N.D. Cal. 1993), the plaintiffs

9   sought declaratory and injunctive relief against a redevelopment agency's unlawful conduct in

10  violation of state and federal civil rights laws that required developments to be accessible to the

11  disabled. The injunctive relief, which included an immediate cessation of funding while the

12  unlawful conduct continued, was coupled with a request for an award of damages. *Id*. at 1358.

13  The court found that administrative tort claims under the Tort Claims Act were not required:

14                      While plaintiffs do seek damages, their request for an injunction
                        declaring that the Agency is in violation of the handicap access
15                      laws and must comply with them in the future is of great weight
                        and not just ancillary to the request for damages. IHS's potential
16                      damages are small and particularly inconsequential compared to
                        the effect of the declarations it seeks.
17

18  *Id.* As in this case, the plaintiffs in *Gibson v. County of Riverside*, 181 F. Supp. 2d 1057 (C.D.

19  Cal. 2002), were individual residents suing on their own behalf and representing a class of

20  residents challenging local zoning laws involving age restrictions which directly affected their

21  households and their families. While the complaint sought compensatory and even punitive

22  damages (neither of which are sought for the class in this case), the court ruled that the claims

23  requirement of the Tort Claims Act did not apply to the state civil rights damages claims:

24                      Plaintiffs' FAC primarily seeks declaratory and injunctive relief,
                        not damages. Plaintiffs want to stay in their homes and want the
25                      freedom to allow within their homes the residency of persons
                        younger than 55 years of age. They also want the County to

26  _____

    (Footnote Continued from Previous Page.)

27  scope of [the Government Tort Claims Act].").

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

conform its actions to the mandates of state and federal housing laws.  Their request for damages is ancillary to this request.

*Id.* at 1085.

### B.    Courts Require Compliance With the Government Tort Claims Act in Lawsuits Whose Chief Purpose is to Obtain Monetary Damages.

Cases in which a government tort claim was required are consistent with this analysis.  For example, in *Gatto*, the court acknowledged that many state law civil rights cases include claims for injunctive relief, but that such actions would not be exempted from the claims requirements in cases "where the plaintiff *does* seek to recover damages from a public entity *and that is his or her chief purpose*."  98 Cal. App. 4th 744, 760 (emphasis in original).  In *Gatto*, an individual sued under the Unruh Civil Rights Act for being ejected from a county fair for wearing a motorcycle club vest, and sought damages of $35,000, as well as injunctive and declaratory relief.  The court reviewed the complaint and determined that monetary damages were the "primary purpose of the action."  *Id*. at 762.  "Nothing in the record suggests Gatto ever considered his interest in obtaining money damages subsidiary to his interest in injunctive relief. Damages are the first thing mentioned in the title of his complaint and the prayer for relief . . . ."  *Id*. at 763.  This is certainly in sharp contrast to the allegations in this case.  Likewise, in *City of San Jose v. Superior Court*, 12 Cal. 3d 447 (1974), the three individual plaintiffs sought $500,000 in damages and the class members sought "recovery for the diminution in the market value of their property . . . on theories of nuisance and inverse condemnation."  *Id*. at 453.  There is no indication that plaintiffs or the class sought injunctive relief.

The court in *Lozada*, 145 Cal. App. 4th at 1139, also determined that the claims requirement applied because the damages claims were primary. The reasoning of the court supports plaintiffs' argument that the damages claims in this case are ancillary.  The complaint in *Lozada* was brought by an individual police officer who alleged that his state law procedural rights were violated in the course of a departmental investigation.  The court found that the damages claim (including civil penalties amounting to $325,000) was "the primary focus of his action" because of factors that are quite distinct from this case:

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1

2

3

4

5

> [T]he record does not indicate that he had any 'transcendent interest' in injunctive or declaratory relief, beyond his ability to obtain civil penalties and actual damages if the court found the department to have acted with 'malice.' Lozada was never suspended and so did not seek reinstatement.  Nor did he specifically seek reassignment or transfer through a mandamus action or in his prayers for injunctive and declaratory relief . . . . (citation omitted).  [D]amages are the first thing mentioned in the title and the prayer for relief of his first and second amended complaints.

6

7

8

9

10

11

*Id*. at 1168-69; *see also Loehr v. City of Ventura*, 147 Cal. App. 3d 1071, 1081-82 (1983) (concluding that the "primary purpose" of this individual wrongful termination case is "pecuniary in nature," and noting that even the claims for injunctive relief and mandamus "seek recovery for loss of future earnings, emotional and mental distress, pain and suffering, humiliation, and damage to reputation" in the amount of $1,000,000 in general damages and $2.5 million in punitive damages).

12

13

14

        C.        **Plaintiffs' and Class' Primary Purpose is to Obtain Injunctive and Declaratory Relief Against Defendant's Unlawful and Discriminatory Policies and Practices and Thus, the Government Tort Claims Act Requirements Do Not Apply.**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

        This lawsuit is in sharp contrast to *Gatto*, *Lozada*, and *Loehr*.  From the "Introduction" of the Complaint, the allegations focus on defendant's policy and practice of "intentionally discriminat[ing] against African-American Section 8 households on the basis of their race and/or source of income" and pursuing "policies and practices that have had an unjustified adverse impact upon them."  (First Amended Complaint at 3.)

        Defendant's illegal policies and practices affect the plaintiffs and class members in their daily lives.  As current residents likely to be subjected to this unlawful conduct, it is obvious that to these plaintiffs and class members obtaining injunctive and declaratory relief that will bring a halt to these discriminatory and intimidating practices is "of great weight."  *See Indep. Hous. Servs. of San Francisco*, 840 F. Supp. at 1358.  Furthermore, whereas the complaints in cases in which the Tort Claims Act requirements applied begin and end with an emphasis on the damages claims, the complaint in this case is quite the opposite – it focuses throughout on plaintiffs' chief purpose to challenge and bring to an end the City's "concerted

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   campaign to reduce the African-American Section 8 population and discourage Section 8

2   families from moving to Antioch."  (First Amended Complaint ¶ 2.)  In contrast to *Lozada*,

3   where the plaintiff had stipulated that his complaint was for "primarily, money or damages,

4   while [his] claims for declaratory/injunctive relief were merely incidental," 145 Cal. App. 4th at

5   1170, the Complaint here alleges as follows:

6   > This class action primarily seeks to end the City's discriminatory
    > and unlawful policies and practices.  Secondly, this action seeks
7   > statutory minimum damages for the class, and additional damages
    > for the named plaintiffs.

8

9   (First Amended Complaint ¶ 4.)  Also, and again in contrast to *Gatto*, *Lozada* and *Loehr*, the

10  Prayer for Relief in the Complaint reflects plaintiffs' chief purpose by focusing on the non-

11  pecuniary claims for relief and spelling out in detail the specific practices that plaintiffs seek to

12  enjoin.  (First Amended Complaint at 32 ¶ 2(a-f).)  Under pleading standards applicable to this

13  motion, these allegations alone are sufficient to defeat the Motion for Judgment on the Pleadings.

14  *See Hal Roach Studios, Inc.*, 896 F.2d at 1550.

15          Plaintiffs and the class specifically allege an ongoing pattern or practice of

16  discrimination and otherwise unlawful conduct that falls disproportionately on African

17  Americans and seek to enjoin specific practices of the Antioch Police Department.  (First

18  Amended Complaint ¶ 2.)  For example, Plaintiffs make class-wide allegations that the Antioch

19  Police Department engages in unwarranted and disparately abusive investigations of minor

20  complaints against African-American Section 8 tenants (*id.* ¶ 47), sends letters to the Housing

21  Authority in an attempt to terminate Section 8 housing benefits (*id.*), searches homes without

22  consent or any other lawful authority (*id.* at ¶ 51), and solicits and encourages complaints from

23  neighbors against African-American, Section 8 households (*id.* at ¶ 53).  Plaintiff Bunton

24  likewise alleges an ongoing course of intimidation and harassment by the Antioch Police

25  Department since she moved to Antioch to be closer to her mother and to provide better living

26  conditions for her children.  (*Id.* at ¶¶ 83, 89.)

27          In contrast to cases finding that damages are the primary purpose of the action,

28  this very substantial request for injunctive relief is coupled with limited damage claims for the

1   class.  The only class monetary relief sought is statutory minimum damages under the Bane Act.

2   *See* Cal. Civil Code § 52(a) (providing statutory minimum damages of $4,000).  No class

3   compensatory or punitive damages are sought.  Moreover, the proposed class includes future

4   class members who, by definition, do not have any current claims for damages and thus, whose

5   interest in the case would be solely for injunctive and declaratory relief.  (First Amended

6   Complaint ¶ 17 ("Plaintiffs bring this action . . . on behalf of a class of all African-Americans

7   who . . . may hold . . . Section 8 housing vouchers, . . . and all members of their households who

8   . . . will reside in the City of Antioch.")  Furthermore, none of the plaintiffs' claims, including

9   Ms. Bunton's non-class claims, seeks punitive damages, also confirming their ancillary nature.

10  When their individual claims are viewed together with the class claims, the primary purpose of

11  the lawsuit is clearly not money damages.

12          Therefore, it is clear that this is a case where the chief goal of all the plaintiffs –

13  both the individual plaintiffs and the class members – is injunctive and declaratory relief.  This is

14  simply not a lawsuit "for money or damages" within the meaning of Gov. Code § 945.4.

15  **II.     THE ADMINISTRATIVE CLAIMS FILED BY PLAINTIFFS**
16  **        ALLEGE CLASS CLAIMS FOR STATUTORY DAMAGES.**

17          Even if this Court determines that this suit is covered by the Government Tort

18  Claims Act, the administrative claims filed by the four plaintiffs were in compliance with the

19  statutory requirements for claims on behalf of a class of similar individuals.  Since Plaintiff

20  Bunton is a member of the alleged class, her damage claims are likewise in compliance with the

21  Tort Claims Act.

22          **A.     Plaintiffs' Government Tort Claims Allege a Class Claim.**

23          Defendant's motion ignores the actual language of the administrative claims filed

24  in this case to support its second argument – that none of the four claims "indicated in any other

25  way that the claims were brought on behalf of a class."  (Motion at 2.)  While selectively quoting

26  language from the claims so as to be able to mischaracterize them as "diverse and

27  individualized" (*id.* at 2, 7), defendant studiously omits the identical language in each tort claim

28  that shows they are not:  "These actions were part of the Department's illegal policy and practice

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1    of discriminatory targeting of African-American families *like mine* who participate in the federal

2    Section 8 housing subsidy program in Antioch."  Tort Claim of Mary Ruth Scott, Motion Ex. B1

3    (emphasis added); *see also* Tort Claims of Alyce Denise Payne, Santeya Danyell Williams, and

4    Karen Latreece Coleman, Motion Exs. B2-4.  Each of these tort claims were incorporated by

5    reference in the Complaint.  (First Amended Complaint ¶ 99.)

6           Although each of the four claims provides facts concerning the actions of the

7    Antioch police officers that caused each plaintiff's injuries, such actions were alleged to be part

8    of a pattern and practice of unlawful conduct by the police.  Thus, each claim made it very clear

9    that all these actions by police officers were part of an official policy and practice that targeted

10   not just the individual claimant but other African-American residents of Antioch who receive

11   Section 8 benefits.  The test enunciated by the *City of San Jose* Court is "substantial compliance"

12   with the Tort Claims Act, and that test is met by an administrative claim that provides specific

13   information about the representative plaintiff "and then sufficient information to identify and

14   make ascertainable the class itself."  12 Cal. 3d at 457.

15          The four claims filed in this case clearly meet the "substantial compliance" test by

16   identifying for the City a class of African-American residents of Antioch who receive Section 8

17   benefits.  And, in fact, the language of the claims quoted above is even more detailed and

18   descriptive than if the claimants had simply added the phrase  "on behalf of all others similarly

19   situated" after describing what happened to them, which even defendant concedes has been

20   found sufficient by courts to satisfy the Tort Claims Act requirements for class claims.  (Motion

21   at 5 n.5.)  *See also California School Employees Ass'n v. Tustin Unified School Dist.*, 148 Cal.

22   App. 4th 510 (2007) (finding organization had complied with the Tort Claims Act by filing

23   complaint on behalf of one member and referencing its effects on other members even though

24   the organization did not use the "similarly situated" language).  Administrative claims "need not

25   contain the detail and specificity required of a pleading, but need only 'fairly describe what [the]

26   entity is alleged to have done.'"  *Stockett v. Assoc. of Cal. Water Agencies Joint Powers Ins.*

27   *Auth.*, 34 Cal. 4th 441, 446 (2004) (quoting *Shoemaker v. Meyers*, 2 Cal. App. 4th 1407, 1426

28   (1992)).  Here the claims clearly allege, and put the City on notice, that it is liable for class-wide

1   illegal conduct.

2       **B.    Defendant Improperly Conflates the Requirements for the**
            **Administrative Claims Procedure with the Requirements for Judicial**
3           **Class Certification in the Litigation.**

4               Defendant also attempts to import class certification standards into the claim's

5   exhaustion process in arguing that the claims fail to meet the "substantial compliance" test

6   because they "fail to establish a well-defined community of interest in questions of law and fact."

7   (Motion at 7.)  While it is true that the court in *San Jose* did find that there was an "insufficient

8   community of interest," that conclusion had *absolutely nothing to do with the sufficiency of the*

9   *administrative claims* – rather, the Court was discussing at that point in its opinion the

10  requirements for class certification after a full evidentiary hearing before the trial court. *San*

11  *Jose*, 12 Cal. 3d at 458-63.

12              Throughout the Motion, defendant conflates the requirements for "substantial

13  compliance" in the claims procedure with the more exacting requirements for judicial class

14  certification in the litigation.[4]  Administrative claims "need not contain the detail and specificity

15  required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.'"

16  *Stockett*, 34 Cal. 4th at 446 (quoting *Shoemaker*, 2 Cal. App. 4th at 1426)).  Given that such

17  claims are filed by mail and often without the assistance of lawyers, courts have stressed that the

18  statutory claims requirements "should not be applied to snare the unwary."  *Stockett*, 34 Cal. 4th

19  at 446 (quoting *Elias v. San Bernardino County Flood Control Dist.*, 68 Cal. App. 3d 70, 74

20  (1977)).  Defendant's argument that the administrative claims must provide "well-defined

21  communities of interest" flies in the face of the California Supreme Court's admonition:  "We do

22  not believe the claims statutes were intended to thwart class relief."  *City of San Jose*, 12 Cal. 3d

23  at 457.

24              If accepted, defendant's standards for administrative class claims would make it

25  _____

26  [4] That defendant is conflating the requirements for a class claim under the Tort Claims Act with
    the requirements for class certification of a federal case is confirmed  by its incorporation of
27  legal arguments from its brief opposing class certification into its brief supporting its Motion for
    Judgment on the Pleadings  (Motion at 7, n.7.)

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1    foolhardy for a class claimant not to "lawyer up" in the pre-litigation period even before the

2    decision to litigate was made.  Defendant's arguments are utterly inconsistent with the

3    recognition by the *City of San Jose* Court that imposing a requirement of detailed information on

4    administrative class claims would "severely restrict the maintenance of appropriate class actions

5    – *contrary to recognized policy favoring them*." *Id.* at 457 (emphasis added).  Defendant's

6    argument also contravenes the policy enunciated by courts – that the claims presentation statute

7    "should be given a liberal construction to permit full adjudication on the merits." *Minsky v. City*

8    *of Los Angeles*, 11 Cal. 3d 113, 123 (1974); *see also Stockett*, 34 Cal. 4th at 449; *Smith v. County*

9    *of Los Angeles*, 214 Cal. App. 3d 266, 280 (1989); *Elias*, 68 Cal. App. 3d at 74; *Blair v. Super.*

10   *Ct.*, 218 Cal. App. 3d 221, 224-25 (1990).

11           In support of this argument that the administrative claim must establish "a well-

12   defined community of interest," defendant relies on a single dated case – *Eaton v. Ventura Port*

13   *Dist.*, 45 Cal. App. 3d 862 (1975).  (Motion at 5-6).  This case does not bear that freight.  First, it

14   should be noted that in *Eaton*, the actual administrative claim was not included in the judicial

15   record, and on that basis alone the court held that plaintiffs were not in substantial compliance

16   with the Tort Claims Act.  *Id.* at 868.  Second, the allegations of that case, which involve

17   compensatory damage claims for a diffuse and diverse class, stand in stark contrast to the present

18   case, where the claim specifically alleges a pattern and practice of discriminatory conduct.

19           In any event, the allegations of the tort claims easily establish a community of

20   interest for the purposes of claim notice. Each claim identifies a pattern of conduct that affects

21   similarly situated African-American Section 8 families ("like mine").

22       **C.    Defendant Had Ample Notice and Opportunity to Investigate**
              **Claims on a Class-Wide Basis.**
23

24           The purposes of the claims presentation requirement are: 1) to provide sufficient

25   information to the government entity so that it can do an early investigation of the facts, 2) to

26   thereby provide an opportunity to settle claims before litigation, and/or 3) to provide the

27   government an opportunity to correct the condition or practices which give rise to the claim to

28   avoid future liability.  *San Jose*, 12 Cal. 3d at 455; *Lozada*, 145 Cal. App. 4th at 1152. The

1    plaintiffs' tort claims make it manifest that they have been injured by actions that are the official

2    policies and practices of the Antioch police, and that other African-American Section 8 families

3    ("like mine") have been subjected to these illegal "discriminatory" policies and practices.

4           In the analogous context of pre-litigation administrative complaints of

5    discrimination under Title VII or the California FEHA, both state and federal courts have

6    recognized that such remedial statutes utilize "procedures designed for the unschooled, not for

7    the 'sophisticated [and]' the cognoscenti (citation omitted)," and thus, in determining the

8    sufficiency of the claim, the court looks to both the language of the claim *and* the "scope of the

9    . . . investigation which can reasonably be expected to grow out of the charge of discrimination."

10   *Sandhu v. Lockheed Missiles & Space Co.*, 26 Cal. App. 4th 846, 858-59 (1994) (quoting

11   *Sanchez v. Standard Brand*, 431 F.2d 455, 466 (5th Cir. 1970)); *accord Oubichon v. North Am.*

12   *Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir. 1973).  In *Paige v. State of Cal.*, 102 F.3d 1035 (9th

13   Cir. 1996), the Ninth Circuit directly addressed whether an administrative claim "not explicitly

14   raising class claims could support a class action."  *Id*. at 1041.  The Court held that the

15   administrative charges of discriminatory hiring practices by the California Highway Patrol,

16   raised by a single officer who was denied promotion and with no mention of a class, was

17   sufficient to support a subsequently filed class action complaint:

18              [A] claim of racial discrimination in the examination process that
                determines eligibility for promotion would necessarily result in an
19              investigation of the CHP's promotion practices, interview system,
                and any pattern of racial discrimination that results from the
20              administration of the agency's procedures.

21   *Id*. at 1042.

22          This reasoning fully applies to the claims, which did in fact explicitly inform

23   defendant that the claimants were challenging official policies and practices of the City and the

24   Antioch Police Department, and that others aside from the individual claimants were affected.

25                               **CONCLUSION**

26          For the foregoing reasons, plaintiffs respectfully request that defendant's Motion

27   for Judgment on the Pleadings be denied.

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1   DATED:  December 21, 2009          AMERICAN CIVIL LIBERTIES UNION OF
                                       NORTHERN CALIFORNIA
2

3

4                                      By:_____/s/ Alan L. Schlosser_____
                                                    Alan L. Schlosser
5
                                       Attorneys for Plaintiffs and the Proposed Class
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

1    **Additional Counsel:**

2    Lawyers' Committee For Civil Rights
     of the San Francisco Bay Area
3    Oren M. Sellstrom (SBN 161074)
     osellstrom@lccr.com
4    Kendra Fox-Davis (SBN 248757)
     131 Steuart Street, Suite 400
5    San Francisco, CA  94105
     Telephone:  415.543.9444
6    Facsimile:  415.543.0296

7    Covington & Burling LLP
     HAYWOOD S. GILLIAM, JR. (SBN 172732)
8    hgilliam@cov.com
     One Front Street
9    San Francisco, CA  94111
     Telephone:  415.591.6000
10   Facsimile:  415.591.6091

11   American Civil Liberties Union
     Foundation of Northern California
12   Alan  L. Schlosser (SBN 49957)
     aschlosser@aclunc.org
13   ANDRE I. SEGURA (SBN 247681)
     39 Drumm Street
14   San Francisco, CA  94111
     Telephone:  415.621.2493
15   Facsimile:  415.255.8437

16   Public Advocates, Inc.
     Richard A. Marcantonio (SBN 139619)
17   Rmarcantonio@publicadvocates.org
     SAMUEL TEPPERMAN-GELFANT
18   (SBN 240944)
     131 Steuart Street, Suite 300
19   San Francisco, CA  94105
     Telephone:  415.431.7430
20   Facsimile:  415.431.1048

21   Attorneys for Plaintiffs SANTEYA DANYELL
     WILLIAMS, MARY RUTH SCOTT, KAREN
22   LATREECE COLEMAN, PRISCILLA BUNTON,
     and ALYCE DENISE PAYNE

23

24

25

26

27

28

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS