THOMAS G. BEATTY (State Bar No. 75794)
JAMES V. FITZGERALD, III (State Bar No. 55632)
H. PATRICK SWEENEY (State Bar No. 43737)
McNAMARA, DODGE, NEY, BEATTY, SLATTERY,
PFALZER, BORGES & BROTHERS LLP
1211 Newell Avenue
Post Office Box 5288
Walnut Creek, CA 94596
Telephone: (925) 939-5330
Facsimile:  (925) 939-0203

Attorneys for Defendant
CITY OF ANTIOCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTEYA DANYELL WILLIAMS; MARY RUTH SCOTT; KAREN LATREECE COLEMAN; PRISCILLA BUNTON, and ALYCE DENISE PAYNE, on behalf of themselves and all others similarly situated ,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANTIOCH,<br><br>Defendant. | Case No. C08-02301 SBA<br><br>**ANTIOCH'S REPLY IN SUPPORT OF RULE 12 MOTION**<br><br>Date: January 12, 2010<br>Time: 1:00 p.m.<br>Judge: Saundra B. Armstrong |

Defendant City of Antioch hereby submits its reply brief in support of its Motion for a Judgment on the Pleadings per FRCP 12(c) and (h)(2)(B) for failure to meet essential state tort claim requirements to seek statutory damages under Cal. Civil Code § 52.[1] Plaintiffs' opposing arguments – (1) that they were not required to file claims because their primary objective is non-pecuniary, and (2) that they did file claims in substantial compliance with the Tort Claims Act – are unpersuasive. Plaintiffs seek statutory damages on behalf of the class in a total amount of $4 million+ which is anything but ancillary to their request for injunctive and declaratory relief. It would defy the purpose of the Tort Claims Act to release Plaintiffs from the claims filing requirements in a case with such significant exposure. The record is further clear that Plaintiffs' claims do not allege a class claim in substantial compliance with the Tort Claims Act and that the Defendant was not sufficiently put on notice of such a claim. The four named Plaintiffs submitted their individual claims through Bay Area Legal Aid, an organization that is precluded by law to initiate and/or participate in class actions.

As such, Defendant respectfully asks this Court to grant this Rule 12 Motion to dismiss Plaintiffs' Eighth Claim for Relief on behalf of Plaintiff Bunton and the class.

## I. LEGAL ARGUMENT

**A.   Defendant's Motion Should Be Granted Because Plaintiff Bunton and the Class *Were* Required to (But Failed to) File A State Tort Claim For Their Damages Under Cal. Civil Code §52 (Eighth Claim for Relief)**

   1.   <u>The Statutory Damages Sought Are Not Ancillary, Incidental or Inconsequential</u>

Plaintiffs argue that they were not required to file government tort claims because their primary objective is injunctive and declaratory relief and the only class monetary relief sought are statutory minimum damages of $4,000 under Cal Civil Code § 52(a). Defendant disagrees. Plaintiffs blatantly attempt to downplay the significance of their pecuniary interest in this class

---

[1] Defendant just briefly responds to Plaintiffs' ill-founded assertion that this motion is a premature attempt to adjudicate the merits of this case. The issue to be decided in this motion is very simple: Are Plaintiff Bunton and the class precluded from seeking damages under Cal. Civil Code §52 for failure to submit a government tort claim in compliance with the Gov't Tort Claims Act? The short answer is "Yes" and does not require any adjudication of the merits of Plaintiffs' discrimination claims. As such, Defendant abstains from responding to Plaintiffs' factual allegations on pgs. 2-4 of their opposition. Further, in *Californians for Disability Rights v. Cal. Dept. of Transportation,* 249 F.R.D. 334, 345 (N.D. Cal. 2008), which Plaintiffs cite, a Rule 12 motion was submitted even before the motion for class certification was filed.

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION        1

action by repeatedly asserting that they are "only" seeking "minimum" statutory damages on behalf of the class. What may sound like pocket money, in reality means a minimum claim of $4,000 for each and every offense for approx. 1,000[2] putative class members –or stated otherwise $4 million in statutory damages. **$4,000,000.00**. Plaintiffs have not cited, and Defendant has not found, any legal authority proposing that a pecuniary exposure of $4 million is ancillary, incidental or inconsequential.[3]

The case law cited by Plaintiffs certainly does not support such preposterous proposition. For instance, Plaintiffs cite *M.G.M. Const. Co. v. Alameda County*, 615 F.Supp. 149, 151 (N.D. Cal. 1985) for the notion that the claims provisions do not apply when the primary relief sought is declaratory. *M.G.M.* does not apply in the instant case. *M.G.M.* is not a class action and does not address the significant monetary exposure that a public entity faces in a class action (*M.G.M.* was only entitled to small damages, namely to recover expenses incurred in the preparation and submission of a contract bid.)

Similarly, in *Eureka Teacher's Ass'n. v. Bd. Of Educ.*, 202 Cal.App.3d 469 (1988), one teacher (not a class) sought reemployment, as well as backpay and fringe benefits which the Court found incidental to her request for reinstatement to employment as a teacher. Clearly, those incidental damages stand in stark contrast to the statutory damages the Plaintiffs are seeking in this case on behalf of an entire class of 1000+ class members.

In *Independent Housing Services v. Fillmore Center Associates,* 840 F.Supp 1328 (N.D. Cal. 1993), plaintiffs (again, not a class) brought a lawsuit against a redevelopment agency and the owners of a housing project based on alleged violations of handicap laws. The Court found that the potential damages were small and particularly inconsequential to plaintiffs' request to comply with handicap access laws. Again, those inconsequential damages stand in stark contrast to the statutory damages sought for 1000+ class members in this case.

Plaintiffs also cite *Gibson v. County of Riverside,* 181 F. Supp. 2d 1057, 1085 (C.D. Cal.

---

[2] Plaintiffs estimate that 1,902 Section 8 recipients lived in Antioch between 2006-2009, a majority of whom (55.8%) were African American. That amounts to approx. 1,061 potential class members.
[3] In addition, Plaintiff Bunton seeks treble damages under Cal Civil Code § 52 which the Ninth Circuit has considered to be "substantial." See Molski v. Gleich, 318 F.3d 937, 951 (9th Cir. 2003).

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION            2

2002), in which a class of residents sued for injunctive and declaratory relief against age restrictions imposed in certain zoned areas, as well as compensatory and punitive damages. While Plaintiffs cite *Gibson* in an attempt to show that the District Court found compensatory and even punitive damages ancillary, a closer read of the Court's decision reveals that *Gibson* provides no guidance on the significant statutory damage exposure in the instant case. The *Gibson* Court does not address any such issue but merely concluded that plaintiffs' request for damages was ancillary to their request for injunctive and declaratory relief, without any further in-depth analysis. (In fact, the Court later found that the County and individually-named defendants were immune from liability for certain damages under the Unruh Act and FEHA. *Id.*, at 1086, 1099.)

In sum, none of the cases cited by Plaintiffs discuss the significant monetary exposure that a public entity faces if the plaintiffs seek statutory damages on behalf of a class of 1000+ alleged members. As such, the cases do not support Plaintiffs' argument that their request for statutory damages in this case (which could potentially exceed $4 million) is ancillary.

In that vein, Plaintiffs' attempt to distinguish their case from *Gatto*, *Lozada*, and *Loehr* is equally unpersuasive. Plaintiffs essentially argue that the primary pecuniary interest of the plaintiffs in *Gatto*, *Lozada*, and *Loehr* is clearly reflected in their complaints.[4] In contrast, Plaintiffs argue, the FAC in this case shows that Plaintiffs' lawsuit is primarily focused on injunctive and declaratory relief, as reflected in their Introduction ("this class action primarily seeks to end the City's discriminatory and unlawful policies and practices. Secondly, this action seeks statutory minimum damages for the class, and additional damages for the named plaintiffs"), and their Prayer for Relief which only asks for statutory minimum damages of $4,000

---

[4] In *Gatto*, the Court found Gatto's pecuniary interest to be his chief purpose because "damages are the first thing mentioned in the title of his complaint and the prayer for relief." *Gatto v. County of Sonoma*, 98 Cal. App. 4th 744, 763 (2002). In *Lozada*, the Court found that the plaintiff had no interest in injunctive or declaratory relief because "damages are the first thing mentioned in the title and the prayer for relief of his first and second amended complaints." *Lozada v. City and County of San Francisco*, 145 Cal. App.4th 1139, 1168-69 (2006). In *Loehr*, the Court found the damages sought (loss of future earnings, emotional and mental distress, pain and suffering, humiliation and damages to reputation) "anything but incidental or ancillary to his request for extraordinary relief." *Loehr v. Ventura County Community College Dist.*, 147 Cal. App.3d 1071 (1983)

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION     3

under Cal. Civil Code § 52(a).[5]

Plaintiffs argument is not persuasive. Plaintiffs seek statutory damages of $4,000 per offense for a class of alleged 1000+ class members, in sum at least $4 million. Damages in the amount of $4 million are not ancillary –whether plead in the beginning, in the middle or in the end of a complaint. If one were to follow Plaintiffs' argument, a plaintiff could easily circumvent the Tort Claims Act requirements, even when seeking million-dollar damages, by artfully drafting a pleading, calling the damages "secondary" and omitting the word "damages" from the title. Clearly, neither *Gatto*, *Lozada*, nor *Loehr* stand for such a proposition.

Moreover, if one were to follow Plaintiffs' argument in a case like this, large classes of plaintiffs would be allowed to sue a public entity for several million dollar in monetary damages, *without* having to submit government tort claims, as long as the complaint is coupled with injunctive or declaratory relief that is not merely trivial. Such argument would run afoul of the purpose of the statutory claims requirement which is to "facilitate early investigation of disputes and settlement without trial if appropriate, as well as to enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." *Gatto*, 98 Cal. App. 4th at 763; *Loehr*, 147 Cal. App.3d at 1079.

2. The Claims Filed by the Four Named Plaintiffs Seek Damages Exceeding $25,000, As Well As Punitive Damages –They Do *Not* Seek Declaratory or Injunctive Relief

Moreover, Plaintiffs' argument that their primary objective is non-pecuniary is contradicted by the government tort claims submitted by the four named Plaintiffs. The claims do not seek injunctive or declaratory relief but are strictly focused on monetary damages, (see Exhibit B1-B4):

> "My family and I suffered personal injury, emotional distress, injury to our reputation, property damages, and other losses, including per se damages based on the deprivation of our civil and constitutional rights, in an amount more than $25,000. I had to take medication and suffered medical complications due to the

---

[5] It should be noted that Plaintiffs' original complaint does not comport with that argument. The original complaint is focused on their pecuniary interest, per Plaintiffs' own standard, as it was filed as "complaint for damages and for injunctive and declaratory relief." Plaintiffs asked for "compensatory, statutory and exemplary damages, and declaratory and injunctive relief" in their introduction, and sought punitive damages for the individually named defendants.

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION     4

Department's illegal acts. The Department acted with oppression, fraud and malice, entitling my family and me to punitive damages. If litigated my claim would qualify as an unlimited civil case in the Superior Court of California."

Thus, even the claims submitted by the four named Plaintiffs do not support their assertion that their primary objective was non-pecuniary. See also *Gatto*, 98 Cal. App. 4th at 762, in which the Court looked at plaintiff's claim to determine whether his primary interest was pecuniary in nature (the *Gatto* Court found that the plaintiff "expressed his personal pecuniary interest in filing a claim in which he informed the county that the damages he sought ... exceeded the amount permitted by Gov't Code § 910 to be included in the claim," and that in a suit to be filed in "either State or Federal Court" he would seek not just injunctive relief but "attorney's fees and punitive damages in the combined amount of $35,000.")

        3.      Defendant Does Not Seek to Dismiss Plaintiffs' Alleged Primary Objective

In addition, this case distinguishes itself from the cases cited by Plaintiffs in one other important aspect. Defendant does not seek to dismiss the entire action, including any claims underlying Plaintiffs' alleged primary objective. Defendant only seeks to dismiss one claim –the damage claim under Cal. Civil Code §52(a) for the class and Plaintiff Bunton which, according to Plaintiffs, is merely secondary.

In sum, Plaintiffs' argument that they were not required to file government tort claims because their primary objective is non-pecuniary, despite seeking monetary damages for the class in excess of potentially $4 million, is not persuasive, not supported by the record and/or any legal authority and should therefore not be entertained by the Court.

    **B.**    **Defendant's Motion Should Be Granted Because Plaintiffs Failed to Submit A State Tort Claim For Damages Under Cal. Civil Code §52 On Behalf Of The Class And Plaintiff Bunton In Substantial Compliance with the Gov't Tort Claims Act**

Plaintiffs further argue that even if the Court determines that this suit is covered by the Government Tort Claims Act, Plaintiffs complied with the requirements by filing claims on behalf of the class. Defendant disagrees. Not only is such argument implausible (Plaintiffs essentially assert that they *did not* have to comply, but *did* comply anyway), it is also contradicted

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION         5

by the record. Plaintiffs' claims do not allege a class claim in substantial compliance with the Tort Claims Act, as corroborated by the original complaint (which was not filed as class action) and the procedural history in this case, especially Plaintiffs' representation through Bay Area Legal Aid which is precluded from initiating class actions.

1. Plaintiffs' Claims Do Not Allege a Class Claim In Substantial Compliance with the Tort Claims Act

First, the wording of the claims submitted by the four named Plaintiffs does not support Plaintiffs' contention that they were filed "on behalf of the class." To the contrary, the claims of the four named Plaintiffs were submitted individually, not on behalf of "similarly situated class members." (See Exhibit B1-B4, "*I am* submitting this claim..."). The claims describe the individual circumstances underlying each claim and allege that the rights of "*my* family in *our* home" were violated and that "*my* family and *I*" suffered injuries which qualify "*my* claim" as an unlimited civil case.

Plaintiffs now attempt to argue that one sentence, two words precisely, in the third paragraph of the claims notices suffice to meet the Claims Act requirements (namely that "these actions by APD officers were part of the Department's illegal policy and practice of discriminatory targeting of African-American families *like mine* who participate in the federal Section 8 housing subsidy program in Antioch." (emphasis added.)) Plaintiffs allege that these words establish substantial compliance with the Tort Claims Act.

Plaintiffs argument is unpersuasive. First, Plaintiffs' reliance on *California School Employees Association v. Tustin Unified School District*, 148 Cal.App.4th 510, 524 (2007) is misplaced as that case is readily distinguishable from the instant case. There, a labor union submitted a claim for payment losses which it incurred by the members of its bargaining unit. The Court found the claim to be in substantial compliance with Cal. Gov't Code § 945.4 because the claim put the School District on notice that the labor union, which is an employee organization, was challenging the School District's practice as applied to its employees. *Id.*, 148 Cal.App.4th at 524.

Here, in contrast, four individual Section 8 voucher recipients submitted individual claims

C08-02301 SBA – REPLY IN SUPPORT OF RULE 12 MOTION   6

alleging a discriminatory policy and practice against Section 8 families. The four individual Plaintiffs were not organized in any way, shape or form when they submitted their claims and did not represent their claims on behalf of other members. Further, the "policy and practice" allegation does not constitute a claim on behalf of a class, but merely a prerequisite element of a public entity's liability under 42 U.S.C § 1983 (*Monell*). Any individual can allege a "policy and practice" claim, regardless of a class action. Thus, the mere allegation of a discriminatory policy and practice against Section 8 families by the individual Plaintiffs did not put the City on notice of a potential class action, let alone a potential exposure of $4 million+ in statutory damages for the class.

In that vein, *Stockett v. Association of Cal. Water Agencies Joint Powers Insurance Authority*, 34 Cal.4th 441 (2004), is of no avail for the Plaintiffs either. Plaintiffs cite *Stockett* for the proposition that claims "need not contain the detail and specificity required of a pleading, but need only 'fairly describe what [the] entity is alleged to have done.' " *Id.*, at 446. In *Stockett*, an individual government employee submitted a claim for wrongful termination and later amended his complaint with additional theories. The California Supreme Court found that *Stockett's* amended complaint did not shift liability to other parties or premise liability on acts committed at different times or places and, thus, fulfilled the purpose of the Claims Act which is "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without expense of litigation." *Id.* At 446, 448.

*Stockett* stands in stark contrast to the instant case. Unlike *Stockett,* comparing the claims of the four named Plaintiffs with their FAC, the Plaintiffs did not simply add another theory of liability to their individual claims. Rather, Plaintiffs are adding a class of 1000+ potential members, a litany of factual allegations, and a new claim for relief asking for statutory damages of $4,000 for each class member, exposing the City to a potential liability of $4 million+ in damages. The previously submitted claims, in contrast, do not provide even remotely sufficient information for an adequate investigation of the alleged claims and significant liability exposure. Thus, even under a liberal construction of the claims requirements, the claims of the four named Plaintiffs do not substantially comply with the Tort Claims Act requirements for the class.

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION 7

### 2. Mere Notice of the Rights Asserted By The Four Named Plaintiffs Does Not Suffice Under the Tort Claims Act

In addition, Plaintiffs' argument that the City had ample notice and opportunity to investigate the claims on a class wide basis is unpersuasive for several reasons.

First, it disregards the California Supreme Court decision in *San Jose* v. *Superior Court*. The Court clearly held that the claims statute is *not* satisfied simply because the city had been provided with notice and information regarding the rights asserted against it. *City of San Jose v. Superior Court,* 12 Cal.3d 447, 455 (1974). The Court stated that

> "It is not the purpose of the claims statutes to prevent surprise. Rather, the purpose of these statutes is to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. (citation omitted) It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim. Such knowledge - standing alone - constitutes neither substantial compliance nor basis for estoppel. (citations omitted)."

*Id*.

The claims submitted by the four named Plaintiffs do not satisfy that purpose. As discussed above, the claims do not provide Antioch sufficient information that it was facing a potential exposure of $4 million in statutory damages for a class of 1,000+ African American Section 8 families in Antioch and, thus, did not enable Defendant to conduct an adequate liability assessment and fiscal planning for potential liabilities.

Further, Plaintiffs' analogous application of pre-litigation complaints in Title VII and FEHA actions under *Paige v. State of California,* 102 F.3d 1035 (9th Cir. 1006) is misplaced. Unlike statutory damages under Cal Civil Code § 52, claims under FEHA are exempt from the claim presentation requirement and, thus provide no guidance in this matter. See *Gatto*, 98 Cal.App.4th at 764.

### 3. Plaintiffs' Original Complaint Was Not Filed as Class Action

The individual and pecuniary character of Plaintiffs' claims is further corroborated by the original complaint that the four named Plaintiffs Williams, Scott, Payne and Coleman filed on May 2, 2008. The complaint sought compensatory, special, punitive and statutory damages, as

C08-02301 SBA - REPLY IN SUPPORT OF RULE 12 MOTION   8

well as injunctive and declaratory relief. Further, consequent to not having filed a tort claim, Plaintiff Bunton was not a named Plaintiff and the complaint was *not* filed as class action. Instead, Plaintiffs added a membership organization, "Antioch Section 8 Families for Fair Housing," as an individually named Plaintiff who asserted the claims of its members.

In sum, much like the government tort claims of the four named Plaintiffs, the original complaint reflects the individual character and mainly pecuniary interest of this case. It certainly does not reflect a primary interest of an entire class for injunctive and declaratory relief.

    4. <u>Bay Area Legal Aid (Plaintiffs' Counsel At The Time) Was Prohibited From Initiating Or Participating in Class Actions</u>

The fact that neither Plaintiffs' claims nor Plaintiffs' original complaint were submitted on behalf of a class, is further corroborated by the fact that Plaintiffs' counsel at the time, Bay Area Legal Aid, was prohibited from initiating and/or participating in class actions. 45 C.F.R § 1617.3 prohibits LSC recipients from "initiating or participating in any class action," which means "any involvement at any stage of a class action prior to or after an order granting relief," per 45 C.F.R § 1617.2 (b)(1). The Ninth Circuit recently addressed the constitutionality of that restriction in *Legal Aid Services of Oregon v. Legal Services Corporation,* 2009 WL 4020783 (9th Cir., November 23, 2009), in which it held that

> "[p]rohibiting grantees from … participating in class actions, Congress did not discriminate against any particular viewpoint or motivating ideology, much less did it aim to suppress 'ideas … inimical to the Government's own interest.' (citation omitted) The Restriction simply limit specific procedural tools and strategies that grantee attorney may utilize in the course of carrying out their legal advocacy. As such, they are permissible under *Velazquez III.*"

*Id.,* at *9.

The four named Plaintiffs filed their government tort claims and their original complaint through their "attorney at Bay Area Legal Aid," an organization that receives LSC funds. As such, Bay Area legal Aid is prohibited from initiating or participating in any class action –which easily explains why Plaintiffs' tort claims and the original complaint were *not* filed as class claims and class action. As the Ninth Circuit stated, Plaintiffs were not unduly prejudiced by their representation through Bay Area Legal Aid which simply limited the procedural tools and

strategies available to them. In fact, they did utilize the assistance of the Impact Fund for amending the complaint and filing the FAC as class action in June/July 2008. Similarly, the Impact Fund could have assisted with the claims filing procedure to adequately preserve Plaintiffs' rights. The failure to do so cannot be construed to Defendant's detriment.

## II. CONCLUSION

In sum, Plaintiffs were required to file government tort claims on behalf of the class for seeking significant statutory damages that are not merely ancillary to their requests for injunctive and declaratory relief. It is clear on the record that Plaintiffs failed to file any such claims in substantial compliance with the Tort Claims Act requirement. As such, Plaintiff Priscilla Bunton and the class are barred from seeking damages under Cal. Civil Code § 52 in this lawsuit per Cal. Gov't Code § 945.4 for failure to file respective government tort claims. Defendant therefore respectfully asks this Court to dismiss the Eighth Claim for Relief for damages under Cal. Civil Code § 52 with regard to Plaintiff Bunton and the class, per FRCP 12(c) and (h)(2)(B).

Dated: December 29, 2009

McNAMARA, DODGE, NEY, BEATTY, SLATTERY, PFALZER, BORGES & BROTHERS LLP

By: _____
Thomas G. Beatty
James V. Fitzgerald, III
H. Patrick Sweeney
Attorneys for Defendant
CITY OF ANTIOCH