Impact Fund
BRAD SELIGMAN (SBN 083838)
bseligman@impactfund.org
JOCELYN D. LARKIN (SBN 110817)
125 University Avenue, Suite 102
Berkeley, CA  94710
Telephone:  510.845.3473
Facsimile:  510.845.3654

Bingham McCutchen LLP
FRANK B. KENNAMER (SBN 157844)
ABIGAIL C. SLONECKER (SBN 252452)
abigail.slonecker@bingham.com
Three Embarcadero Center
San Francisco, CA  94111
Telephone:  415.393.2000
Facsimile:  415.393.2286

Attorneys for Plaintiffs and Certified Class

**[Additional Counsel Listed on Signature Page]**

McNamara, Ney, Beatty, Slattery,
Borges & Ambacher LLP
THOMAS G. BEATTY (SBN 75794)
JAMES V. FITZGERALD, III (SBN 55632)
1211 Newell Avenue, P.O. Box 5288
Walnut Creek, CA  94596
Telephone:  925.939.5530
Facsimile:  925.939.0203

Attorneys for Defendant
CITY OF ANTIOCH

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANTEYA DANYELL WILLIAMS, MARY RUTH SCOTT, KAREN LATREECE COLEMAN, PRISCILLA BUNTON, and ALYCE DENISE PAYNE, on behalf of themselves and all others similarly situated, | No. C-08-2301 SBA |
| Plaintiffs, | **JOINT CASE MANAGEMENT CONFERENCE STATEMENT** |
| v. | |
| CITY OF ANTIOCH, | **Date:  February 16, 2011** **Time:  3:30 pm** **By Telephone** |
| Defendant. | |

The parties jointly submit this Case Management Conference Statement and request that the Court issue it as its Case Management Order, after resolving any disputes between the parties.

///

1.  **Jurisdiction and Service**:

Plaintiffs' claims arise under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and 42 U.S.C. § 1983.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1343.  The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over claims under the California Constitution, California Fair Employment & Housing Act, Cal. Gov't Code § 12940, *et seq.*, California Gov't Code § 11135, the Bane Act, Cal. Civ. Code § 52.1, and common law torts.  Defendant has been served.

2.  **Facts**:

Plaintiffs bring this class action against Defendant City of Antioch for alleged discrimination against African-American Section 8 housing voucher holders on the basis of race and/or source of income.  Defendant denies Plaintiffs' allegations.

The following principal factual issues are in dispute:

1.  Did the City Council direct the police department to unlawfully target Antioch tenants who are recipients of Section 8 vouchers?

2.  Did the City and the Antioch Police Department create a unit called the "Community Action Team" ("CAT") within the police department to unlawfully target Section 8 recipients?

3.  Did the Antioch Police Department attempt to obtain a list of the names and addresses of Section 8 voucher recipients from the county Housing Authority?

4.  Did the CAT unlawfully focus particularly on Section 8 voucher recipients, particularly those who are African American, residing in the more affluent neighborhoods of Antioch, southeast of the railroad tracks?

5.  Did the CAT investigations unlawfully focus disproportionately on Section 8 tenants and among such tenants African Americans?

6.  Did the CAT or Antioch Police Department conduct illegal searches of the homes of Section 8 recipients, particularly those who are African American?

7.  Did the CAT or Antioch Police Department unlawfully harass Section 8 recipients and particularly African Americans to force them to move out of the city?

8.  Did the CAT make unfounded referrals of nuisance incidents, including domestic violence incidents, to the county Housing Authority for Section 8 voucher recipients, particularly those who are African American?

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

9. Did CAT or other officers in the Antioch Police Department have a practice of asking African-Americans under investigation whether they own or rent their home and whether they are Section 8 voucher participants?

10. Did CAT have a practice of contacting landlords to advise them of nuisance complaints against tenants with Section 8 vouchers, particularly those who are African American, and unlawfully threatening them with civil and criminal liability for the conduct of their tenants?

11. Did CAT officers unlawfully advise or encourage landlords not to rent to Section 8 voucher recipients or to African Americans?

12. Has the Antioch Police Department and/or its CAT team unlawfully coerced, intimidated, threatened or interfered with Plaintiffs and the class exercise or enjoyment of renting their homes?

13. Has the Antioch Police Department and/or its CAT team's policy and practice of targeting Section 8 tenants had an unlawful adverse impact upon African American tenants or Section 8 families that is not justified by necessity?

14. If the Antioch Police Department's policy or practice of targeting Section 8 Tenants is justified, are there less discriminatory alternatives?

15. Does the City of Antioch, its Police Department or its CAT team receive financial assistance from the State of California?

16. Has the Antioch Police Department and/or its CAT team engaged in an unlawful pattern, practice or custom of discrimination and harassment against African American Section 8 households?

17. Has the Antioch Police Department and/or its CAT team engaged in an unlawful pattern, practice or custom of discrimination and harassment against Section 8 households based on their source of income or perceived source of income i.e. Section 8 Housing Assistance?

18. Did the Antioch Police and/or CAT officers conduct an illegal search of the residence of plaintiff Santeya Williams when it responded it to a domestic violence call?

19. Did the Antioch Police and/or CAT officers unlawfully notify the county Housing Authority in order to get plaintiff Williams' housing benefits terminated?

20. Did the Antioch Police and/or CAT officers unlawfully contact plaintiff Williams' landlord to encourage the termination of her lease?

21. Did the Antioch Police and/or CAT officers conduct an illegal search of the residence of plaintiff Mary Scott when it responded it to a domestic violence call?

NO.: C-08-2301 SBA

22. Did the Antioch Police and/or CAT officers unlawfully notify the county Housing Authority in order to get plaintiff Scott's housing benefits terminated?

23. Did the Antioch Police and/or CAT officers repeatedly unlawfully contact plaintiff Scott's landlord to encourage him to terminate her lease?

24. Did the Antioch Police and/or CAT officers unlawfully warn plaintiff Scott's landlord about renting to African Americans?

25. Did the Antioch Police and/or CAT officers conduct an illegal search of the residence of plaintiff Karen Coleman, and attempt to conduct additional illegal searches?

26. Did the Antioch Police and/or CAT officers unlawfully notify the county Housing Authority in order to get plaintiff Coleman's housing benefits terminated?

27. Did the Antioch Police and/or CAT officers unlawfully contact plaintiff Coleman's landlord to encourage the termination of her lease?

28. Did the Antioch Police and/or CAT officers conduct an illegal search of the residence of plaintiff Priscilla Bunton when it responded it to a domestic violence call?

29. Did the Antioch Police and/or CAT officers unlawfully notify the county Housing Authority in order to get plaintiff Bunton's housing benefits terminated?

30. As a result of her domestic violence calls, did the Antioch Police and/or CAT officers unlawfully notify the county Housing Authority in order to get plaintiff Alyce Payne's housing benefits terminated?

31. Did the Antioch Police and/or CAT officers unlawfully contact plaintiff Payne's landlord to encourage the termination of her lease?

32. Did Payne's landlord terminate her lease as a result of unlawful contact from the Antioch Police and/or CAT officers regarding domestic violence calls to her home?

**3**. **Legal Issues**:

The legal issues that may ultimately be resolved are:

1.   Did Defendant's policy, pattern or practice violate the rights of the Plaintiffs and class members under the Fair Housing Act, 42 U.S.C § 3617?

2.   Was Defendant's policy, pattern or practice the product of intentional discrimination in violation of the Fair Housing Act?

3.   Has Defendant's policy, pattern or practice had an adverse impact on African Americans in violation of the Fair Housing Act that cannot be justified by necessity?

NO.: C-08-2301 SBA

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

4. Has Defendant's policy, pattern or practice resulted in a denial of equal protection in violation of 42 U.S.C. 1983 for Plaintiffs and the class?

5. Did Defendant intentionally discriminate against the Plaintiffs and the class based upon their race?

6. Were the Antioch officials and police officers acting under color of state law?

7. Did Defendant conduct unreasonable searches and seizures of the Plaintiffs and class members in violation of the Fourth Amendment and 42 U.S.C. §1983?

8. Has Defendant's policy, pattern or practice resulted in a denial of equal protection in violation of the California Constitution, Article 1, Section 7 for Plaintiffs and the class?

9. Has Defendant's policy, pattern or practice resulted in a denial of equal protection or had an adverse impact on Plaintiffs and the class in violation of Cal. Government Code § 11135 and implementing regulations?

10. Has Defendant's policy, pattern or practice violated the Cal. Fair Employment and Housing Act by discriminating based on race against Plaintiffs and the class?

11. Has Defendant's policy, pattern or practice violated the Cal. Fair Employment and Housing Act by discriminating based on source of income against Plaintiffs and the class?

12. Has Defendant conducted unreasonable seizures and searches of Plaintiffs and class members in violation of the California Constitution article I, section 13?

13. Has Defendant's policy, pattern or practice violated the Bane Act, Cal. Civ. Code § 52.1?

14. Does Defendant's conduct constitute intentional infliction of emotional distress against the individual Plaintiffs?

15. Does Defendant's conduct constitute negligence infliction of emotional distress against the individual Plaintiffs?

16. Does Defendant's conduct constitute tortuous interference with contractual relationships against the individual Plaintiffs?

17. If Defendant's policy, pattern or practice is found to violate the law, is injunctive relief necessary to stop the illegal conduct?

18. If Defendant's conduct violated Plaintiffs' rights, are individual Plaintiffs entitled to damages?

19. The City of Antioch incorporates by reference and asserts all available defenses raised in its Answer to Plaintiffs' First Amended Complaint, (Doc. #20, filed August 28, 2008).

NO.: C-08-2301 SBA

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

4. **Motions**:

There are no pending motions.   Prior substantive motions include:

*Class Certification Motion* - Plaintiffs filed a motion for class certification, which the Court granted on September 2, 2010.   The Court defined the class as: "all African-Americans who have held, currently hold, or may hold Section 8 housing vouchers, and all members of their households, who reside, have resided or will reside, in the City of Antioch."  The Court appointed Priscilla Bunton, Santeya Williams, Mary Scott, Karen Coleman, and Alyce Payne as representatives of the certified class. The Court appointed the Impact Fund, Bingham McCutchen LLP, the ACLU of Northern California, Public Advocates, Inc., the Lawyers' Committee for Civil Rights of the Bay Area, and Haywood Gilliam of Covington & Burling LLP to represent the class.

*Motion for Judgment on the Pleadings* – Defendant moved for judgment on the pleadings with respect to statutory minimum damages sought by plaintiff Bunton and on behalf of the class under the Bane Act (Cal. Civil Code Section 52.1).  The Court granted the motion on the grounds that the class and plaintiff Bunton failed to comply with the Government Tort Claims Act.

*Bifurcation Motion* -  Plaintiffs also moved to bifurcate the action into liability and damages stages, which the Court denied because statutory minimum damages for the class were no longer part of the case as a result of the ruling on Defendant's Motion for Judgment on the Pleadings discussed above.

Defendant may file a motion to further restrict the class.

5. **Amendment of Pleadings**:

At this time, neither party contemplates any amendments.  Plaintiffs may seek to amend or supplement the complaint on the basis of facts learned during merits discovery.

///

NO.: C-08-2301 SBA

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1     **6.   Evidence Preservation**:

2     The parties reached a Stipulation Regarding Document Retention, which Magistrate

3     Laporte entered as an order on January 6, 2009.

4     **7.   Disclosures**:

5     The parties exchanged Rule 26 disclosures prior to the class certification motion.   The

6     parties anticipate that supplemental disclosures will be made as the case approaches trial.

7     **8.   Discovery**:

8     The parties conducted extensive discovery in connection with the class certification

9     motion; class discovery closed in mid-2009.  The parties propose the following discovery plan

10    for the merits stage:

11    *Electronic Data*:  Defendant shall produce updated electronic data regarding police

12    conduct in a form acceptable to Plaintiffs. If needed, Defendant will make available to Plaintiffs'

13    data consultant/expert a person qualified to answer technical questions regarding the electronic

14    data, without the need for formal discovery.

15    *Depositions*:    Plaintiffs propose that each side shall be limited to 7 (seven) non-expert

16    depositions prior to the discovery cut-off.  Defendant contends that such limitation is unfairly

17    prejudicial since Defendant does not know yet which -and how many- additional witnesses, that

18    have not been disclosed during the pre-certification stage, Plaintiffs intend to disclose as

19    potential trial witnesses.  Defendant is in no position to agree to such discovery limitation prior

20    to the implementation of a meaningful discovery plan that allows a fair trial preparation.

21    Plaintiffs respond that each side has already made disclosures and have responded to

22    interrogatories identifying witnesses (which may be supplemented).  The number of deposition

23    permitted should be set now, rather than be left open. It would be unfair to require parties to

24    identify trial witnesses a year in advance of trial.

25    Each Rule 30(b)(6) deposition shall count as one deposition, regardless of the number of

26    witnesses produced.  No later than 72 hours before a scheduled Rule 30(b)(6) deposition,

27    Defendant shall disclose the name(s) and title of any witnesses it intends to produce for

28    deposition.  All depositions shall be limited to seven (7) hours, except that if Defendant produces

NO.: C-08-2301 SBA

JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1  more than two witnesses for a 30(b)(6) deposition, the parties shall meet and confer as to how

2  much time will be required for the deposition.  For party-controlled witnesses, depositions shall

3  be taken at the office of the defending counsel, or the residence/business address of the witness,

4  at the election of the defending counsel.

5       *Interrogatories*:  Subject to the duty to supplement earlier discovery responses, each side

6  will be limited to 10 additional interrogatories.

7       *Temporal Scope of Discovery*: The parties may seek documents and data for the period

8  January 1, 2004 to the present, except that if Defendant retains records that pertain to any

9  plaintiff created prior to that date, it shall produce such records regardless of the time period to

10  which they pertain, subject to any discovery objections Defendant may have other than the

11  temporal scope of discovery.  The parties will meet and confer regarding pre January 1, 2004

12  discovery for any identified class members.

13       *Experts*:  The schedule for expert reports is set forth below in item 17.  At the same time

14  that expert reports are produced, the producing party shall also produce the expert's supporting

15  files, in electronic form, including the basis for any calculations and analysis (i.e. formulas,

16  databases utilized).  Each party's expert may be deposed.

17       *Discovery Disputes*:  The parties agree that if there is a discovery dispute that it be

18  referred to Magistrate Judge Elizabeth Laporte.

19      **9. Class Actions**:

20       As noted above, the Court has certified a class defined as "all African-Americans who

21  have held, currently hold, or may hold Section 8 housing vouchers, and all members of their

22  households, who reside, have resided or will reside, in the City of Antioch."

23      **10. Related Cases**:

24       Plaintiffs contend that there was one related case: *Richardson v. City of Antioch,* 2010

25  WL 2764709 (N.D.Cal. 2010).  The case settled.

26  Defendant denies any relation between *Richardson v. City of Antioch,* 2010 WL 2764709

27  (N.D.Cal. 2010) and the present case.  Two other cases involving similar factual and legal issues

28  have been resolved since the filing of this action.

1      *Tuggles v. Antioch,* C08-01914JCS

2           Ms. Tuggles, a single African-American Section 8 holder, filed an action against the City

3      of Antioch and individual CAT officers based on allegations of race-based discrimination, which

4      Defendant claims are very similar to the allegations in this class action.

5           The Court, Hon. Magistrate Judge Joseph C. Spero, dismissed the majority of Ms.

6      Tuggles' claims on summary judgment, (Doc. # 110, filed October 2, 2009).  Judgment was

7      entered in favor of Defendants on the remaining claims after a four day jury trial which ended

8      with a complete defense verdict, (Doc. # 39, filed September 2, 2010). Plaintiff has filed a Notice

9      of Appeal.

10          *Patras v. Antioch,* CV09-1891 MMC

11          The Patras family, who owned several Section 8 rental properties in Antioch, filed an

12     action against the City of Antioch and individual CAT officers for harassment, race-based

13     discrimination and unlawful searches and seizures, which Defendant claims are similar to the

14     allegations raised in this class action.  One of Patras' tenants, Ms. Mary Ruth Scott, is a named

15     plaintiff in this class action.The parties entered into an agreement dismissing the entire action

16     and the Court dismissed the action on September 22, 2010, (Doc. # 39).

17          **11**. **Relief**:

18          Plaintiffs seek injunctive relief for the certified class, as well as attorneys' fees.  Named

19     Plaintiffs also seek compensatory, special and statutory damages. The Court dismissed Plaintiff

20     Bunton's and the class's claims for statutory damages under Cal. Civil Code § 52.1, after

21     GRANTING Defendant's motion for judgment on the pleadings on September 2, 2010, (Doc. #

22     203). Defendant prays for relief as stated in its answer to Plaintiffs' First Amended Complaint,

23     (Doc. # 20, August 28, 2008).

24          **12. Settlement and ADR**:

25          The parties held a settlement conference with Magistrate Judge Larsen prior to the filing

26     of the class certification motion.  The settlement conference was unsuccessful.  The parties

27     believe that, given the Court's rulings on the certification and damages motion, another effort at

28

1    settlement may be useful. Judge Larson is scheduled to retire May 31, 2011, so the settlement

2    conference should be scheduled before that date.

3        **13. Consent to a Magistrate**:

4        Defendant does not consent to have a Magistrate Judge conduct all further proceedings.

5        **14. Other References**:

6        The parties reserve comment on this issue.

7        **15. Narrowing of Issues**:

8        The parties will attempt to narrow the issues in this matter through dispositive motions,

9    stipulations and motions in limine prior to trial.

10   The Court DENIED Plaintiffs' motion to bifurcate this action into a liability and a damages

11   phase, both for trial and discovery purposes.  (Doc. # 205, filed September 2, 2010).

12       **16. Expedited Schedule**:

13       N/A.

14       **17. Scheduling:**

15       The parties propose the following dates for discovery, pre-trial and trial:

16           May 1, 2011:      Supplemental Rule 26 Disclosures

17           October 1, 2011: Non-expert discovery deadline

18           October 15, 2011: Plaintiffs' expert reports

19           October 30, 2011: Defendant's expert reports

20           November 14, 2011: Plaintiffs' expert rebuttal reports

21           December 4, 2011 : Last Day to File Dispositive Motions

22           Spring 2012 Subject to Court Calendar:  Pre-trial Conference

23           Spring 2012  Subject to Court Calendar: Trial

24       **18. Trial**:

25       Plaintiffs have made a jury demand. Defendant joins in the demand for a jury trial.  The

26   parties estimate that the trial will take 14 days.

27   ///

28   ///

1        **19.** **Disclosure of Non-Party Interested Entities or Persons**:

2            Plaintiffs have filed a "Certification of Interested Entities or Persons" and affirm that

3     there are no entities or person, other than Plaintiffs' counsels' organizations, that have an

4     interest, financial or otherwise, in this case that could be substantially affected by the outcome of

5     the proceedings.

6            Civil L.R. 3-16 does not apply to governmental entities.

7

8     DATED:  February 4, 2010                    THE IMPACT FUND

9

10

11                                                By:_____/s/ Brad Seligman_____
                                                          Brad Seligman

12                                                Attorneys for Plaintiffs and the Certified  Class

13    **Additional Counsel:**

14
      Lawyers' Committee For Civil Rights
15    of the San Francisco Bay Area
      OREN M. SELLSTROM (SBN 161074)
16    osellstrom@lccr.com
      131 Steuart Street, Suite 400
17    San Francisco, CA  94105
      Telephone:  415.543.9444
18    Facsimile:  415.543.0296
      Covington & Burling LLP
19    HAYWOOD S. GILLIAM, JR. (SBN 172732)
      hgilliam@cov.com
20    One Front Street
      San Francisco, CA  94111
21    Telephone:  415.591.6000
      Facsimile:  415.591.6091
22
      American Civil Liberties Union
23    Foundation of Northern California
      ALAN  L. SCHLOSSER (SBN 49957)
24    aschlosser@aclunc.org
      39 Drumm Street
25    San Francisco, CA  94111
      Telephone:  415.621.2493
26    Facsimile:  415.255.8437

27    Public Advocates, Inc.
      RICHARD A. MARCANTONIO (SBN 139619)
28    Rmarcantonio@publicadvocates.org

                                        10                          NO.: C-08-2301 SBA

                        JOINT CASE MANAGEMENT CONFERENCE STATEMENT

1
SAMUEL TEPPERMAN-GELFANT
(SBN 240944)
2
131 Steuart Street, Suite 300
San Francisco, CA  94105
3
Telephone:  415.431.7430
Facsimile:  415.431.1048
4

Attorneys for Plaintiffs and the Certified Class
5

6
DATED:  February 4, 2010                MCNAMARA, NEY, BEATTY, SLATTERY,
                                                           BORGES & AMBACHER LLP
7

8

9
                                                  By:_____/s/  Thomas Beatty_____
10
                                                                     Thomas Beatty

11
                                                      Attorneys for Defendant City of Antioch

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT CONFERENCE STATEMENT